## Angel, et al. v. Wood, et al.

## Angel's Administratrix, et al. v. Fugate, et al.

(Decided March 28, 1913.)

### Appeals from Logan Circuit Court.

1. Wills—Construction.—Under a will by which a testator devised to his wife all of his property, coupled with the limitation "but

at her death if there should be anything left after her funeral expenses are paid, and a nice substantial monument erected to her memory I wish half that is left to be given equally to my brothers or their heirs, the remaining half to be disposed of as she may see or think proper," the wife takes only a life estate with power to sell and dispose of the property during her lifetime, but with power to dispose of only half that remains by will, and the limitation over of half of the property that remains at her death is valid.

2. Wills—Construction—Life Estate—Power of Disposition During Lifetime of Devisee.—Where a testator devises property to his wife for life, with general power of disposition during her lifetime, with a limitation over to his three brothers of half that remains at her death, and the wife conveys to two of the brothers a certain portion of the property in consideration of their releasing all claims against the estate, the children of the third brother of the testator cannot complain that she conveyed to the testator's two brothers more than they were entitled to, but are entitled to receive only one-third of one-half that is left.

3. Wills—Construction—Action to Settle Estate—Joinder of Claimants Under the will.—In an action by an administrator with the will annexed of a testatrix who holds title to her land as the devisee of her husband, to settle the estate of the testatrix, where the claimants under the will of her husband are made parties in order to pass title to the real estate devised, it is proper for the chancellor in the same action to permit the parties claiming under the will to join issue on the construction thereof, and to have their rights finally adjudicated.

4 Wills—Construction—Action to Settle Devised Estate—Infant Defendants—Service—Sufficiency.—Where in a suit by an administrator with the will annexed of a testatrix, to settle her estate, certain infant defendants are proper parties, and other claimants under the will of the testatrix's husband file an answer and cross-petition against them, seeking a construction of the will and asking that certain lands devised by the testatrix's husband be partitioned, and the infants are properly before the court, both on the original petition and the answer and cross-petition, the court has jurisdiction to determine the rights of the parties under the will, and therefore to adjudge either a partition or a sale of the land devised, as the necessities of the case require, and the fact that the other claimants filed against the infants an amended answer and cross-petition, asking that the land be sold on the ground of indivisibility, and that no process on the amended answer and cross-petition was served on the infants, does not render the judgment erroneous.

5. Appeal—Judgment as to One Not Party.—The propriety of the court's action in fixing an attorney's fee will not be reviewed on appeal where the attorney is not a party to the appeal.

6. Mortgages—Over-payment—Evidence.—In an action to recover

an over-payment on a mortgage, evidence examined and held to sustain the finding of the chancellor in favor of the plaintiffs.

7. Trustees—Mortgage to Trustee's Brother—Liability of Trustee for Over-payment of Mortgage Debt.—Where a cestui que trust executes a mortgage to the trustee's brother, and the money loaned is furnished from the joint bank account of the trustee and his brother, and the payments on the mortgage are made to the trustee in such a way that it is impossible to separate the trustee from his brother in the transaction, it is proper to hold the trustee liable for an over-payment of the mortgage debt.

8. Trustees—Settlement— Conclusiveness.—Where in an action by the cestui que trust against a trustee to have the chancellor invest the trust funds in real estate, the cause was referred to the master commissioner to ascertain and report the amount of the trust funds in the hands of the trustee, and he, after taking proof, reports the balance, and the report is confirmed, the judgment is conclusive in a subsequent action against the trustee for a settlement of his accounts.

9. Trustees—Payments Made Pursuant to Judgment—Subsequent Reversal—Protection of Trustee.—Where payments are made by a trustee pursuant to a judgment which was not superseded, but was subsequently reversed, he is protected by the judgment as to payments made to third parties, but not as to payments made to his brother, which are, in effect, payments to himself.

I. G. MASON and O'REAR & WILLIAMS for appellants.

BROWDER & BROWDER, SELDEN Y. TRIMBLE and TRIMBLE & BELL for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming in Part and Reversing in Part.

These two cases have been consolidated and will be considered in one opinion.

Dr. W. E. Bowling and his wife, Eliza J. Bowling, lived in Logan County, near Adairville. Dr. Bowling owned a large farm in that county. He and his wife had no children. A few years before Dr. Bowling's death, he and his wife took into their home a young man by the name of Albert M. Angel. Later on there came to live in the family a niece of Mrs. Bowling. Albert Angel and the niece were subsequently married. Dr. Bowling died in the year 1878. His will, which was duly probated in the Logan county court, is as follows:

"In the name of God, Amen.

"I, William E. Bowling, of the county of Logan, and State of Kentucky, being of sound mind and memory, and considering the uncertainty of this frail and transitory

life, do therefore make, ordain, publish and decree this to be my last *Will* and Testament: That is to say, First, after all my lawful debts and funeral expenses are paid and discharged, the residue of my estate, To my dearly beloved wife, who has been the partner of my joys and sorrows during the long and weary years of my enfeebled health, has given her constant time and efforts to the alleviation of my sufferings, and always manifesting toward me that divine love which springs from a pure heart and a sympathetic nature, thus proving herself one of (Father says the most) the most devoted and affectionate wives under all circumstances, I give and bequeath *all* my Estate, real personal and mixed, of which I shall die possessed, or to which I may be entitled, But at her death if there should be anything left after her funeral expenses are paid, and a *nice* substantial monument erected to her memory I wish half that is left to be given equally to my Brothers or their heirs, The remaining half to be disposed of as she may see or think proper. Likewise I make, constitute, and appoint, My said wife Eliza Jane Bowling to be sole Executrix of this my last will and testament, hereby revoking all former wills by me made.

"No Bond or Security of any kind or description to be required of her. I wish her to be free and unincumbered in the management of the property I have willed to her.

"My Desire and wish is (at any time she may need assistance), for her to get My Brothers, R. C. and J. M. Bowling to give her all that may be necessary, they receiving fair and reasonable compensation for their services. As witness whereof, I have hereunto subscribed my name and affixed my seal, The 26th October in the year of Our Lord one thousand eight hundred and seventy-seven (1877)."

Dr. Bowling left three brothers, R. C. Bowling, J. M. Bowling and Henry Bowling. On June 17, 1878, Mrs. Bowling conveyed to R. C. Bowling and J. M. Bowling, two of Dr. Bowling's brothers, a tract of land supposed to contain about 100 acres, but which it afterwards developed contained about 140 acres. The conveyance was made "in consideration that the said R. C. and J. M. Bowling have released and relinquished to her all their rights, title and interest in & to the estate of their deceased brother, Dr. W. E. Bowling."

Mrs. Bowling died in the year 1892, leaving a will, by which she devised all of her property to Albert M. Angel and his wife for life, with remainder to their children. Albert M. Angel was appointed her executor. He declined to qualify, and W. S. Gambill was thereupon appointed administrator with the will annexed.

On September 8, 1892, W. S. Gambill, as administrator of Mrs. Bowling, brought suit against A. M. Angel, his wife, Lizzie Angel, and their two infant children, Willie Angel and Oma Angel, infants under 14 years of age, Helen Wood and her husband, B. S. Wood, J. M. Bowling, George S. Bowling, the Peoples Bank and Bank of Adairville, to settle the estate of Mrs. Bowling. It was charged in the petition that the decedent left debts in excess of $3,000, and that the proceeds of the sale of her personal property were insufficient to pay the debts. Plaintiff asked that the case be referred to the master commissioner to hear and report on claims against the estate, and that enough of the real estate belonging to the decedent be sold to pay her debts. Summons was served on A. M. Angel and his wife in person and on the infant defendants, Willie Angel and Oma Angel, the only children they then had, by delivering a copy of the summons to their father, Albert M. Angel, who had charge of them. W. W. Bell, a regular practicing attorney, was appointed guardian *ad litem* for the infant defendants. Later on, Helen Wood and her husband, B. S. Wood, George S. Bowling and J. M. Bowling, Helen Wood, George S. Bowling and J. M. Bowling being the only children of Dr. Bowling's deceased brother, Henry Bowling, filed an answer, counterclaim and cross-petition, wherein they denied certain allegations of the original petition with reference to their interest in the lands in controversy under and by virtue of Dr. Bowling's will, asserted certain claims under and by virtue of said will, and asked for a construction of the will, and for all special and general relief. Summons was issued on the cross-petition against the infant defendants, Oma and Willie Angel, and served on them by delivering a copy thereof to their father, A. M. Angel, who had charge of them. The administrator afterwards filed a reply and answer to the counterclaim of Helen Wood and the Bowlings, wherein he united with them in asking the court to construe the will of Dr. Bowling and to determine the respective interests of the parties to the action in the

land in controversy. Thereafter an answer was filed on behalf of A. M. Angel and his wife and their infant children, denying certain allegations of the cross-petition against them filed by Helen Wood and J. M. and George S. Bowling. W. W. Bell, the guardian *ad litem* for the infants, Willie Angel and Oma Angel, filed on behalf of the infants a report adopting the answer filed by their father and mother as the answer of the infants to the cross-petition of Mrs. Wood and others. Thereafter a reply was filed by Mrs. Wood and others to the answer. Numerous other pleadings were filed which it is not necessary to refer to. On February 28, 1893, the court entered judgment construing the will of Dr. Bowling. By the judgment in question it was held that Mrs. Bowling took an estate for life in all the property Dr. Bowling owned at his death, with an unlimited power of disposition during her lifetime. It was further adjudged that Mrs. Bowling had the right to devise one-half of the property that remained undisposed of at her death, after deducting enough to pay her funeral expenses and providing for a suitable monument to her memory, and that the other half of the property went to and should be equally divided among Dr. Bowling's three brothers, Robert C., James M. and Henry C. Bowling.

It developed from the report of the master commissioner that Mrs. Bowling left debts amounting to something like $3,000. The court thereafter directed a sale of enough land to pay the debts and costs. Eighty-four and one-half acres of the land was sold, and M. L. Fugate became the purchaser.

During the progress of the proceedings, a compromise agreement was signed by Albert Angel and wife and Ben S. Wood, the husband of Helen Wood, on her behalf and on behalf of the other heirs of Henry Bowling, by which it was agreed that there should be laid off to Helen Wood and her brothers about 60 acres of the land in controversy, and an amended and supplemental answer and counterclaim was filed by Helen Wood and others, setting up the compromise agreement and asking that it be confirmed by the court. The Angels pleaded that the infants were not bound by this agreement. Later on, Helen Wood and the other heirs of Henry C. Bowling, deceased, filed an amended answer and cross-petition asking that if the compromise agreement be not confirmed, that all the remainder of the land be sold on the ground that it

could not be divided without materially impairing its value, or the value of their interests therein. A written notice of the filing of this amended answer and cross-petition was served on Albert M. Angel and wife, and on the infant defendants, and thereafter the guardian *ad litem* filed a report asking that the court protect the rights of the infants in any judgment he might enter. Thereafter the court entered judgment adjudging that the land could not be divided without materially impairing its value, and directing a sale of the remainder of the land, amounting to about 154 acres. The land was sold and M. L. Fugate became the purchaser. The court adjudged that the Angels were entitled to 114-154 of the purchase money after the payment of the costs, and that Helen Wood and her two brothers were entitled to 40-154. Theretofore certain fees had been allowed various attorneys in the case, and these fees and the costs of the action were directed to be paid before the fund was divided. From the various judgments so entered, the infant defendants prosecute this appeal.

The first question to be decided is: Did the chancellor properly construe the will of Dr. W. E. Bowling? The rule is that where an estate is given in fee, a devise over of what is left or not disposed of by the first taker is void. Where, however, a life estate only is devised, with power of disposition, a devise over of that part of the estate which is not disposed of is valid. Irvin v. Putnam, 89 S. W., 581; Becker v. Roth, 132 Ky., 429. The pivotal question in every case is: Did the testator devise to the first taker a fee or a life estate, with power of disposition? In Moore v. Webb, 2 B. Mon., 282, the court said:

"The unqualified right of disposition given to the widow during her life, as well as at her death, imports, in our judgment, a devise of the absolute title to her in fee, and not merely a life estate with the power of appointment at her death."

In the will under consideration the devise to Mrs. Bowling and the limitation over occur in the same sentence. Had she been given the power to dispose of the devised estate both during her lifetime and at her death, we would necessarily have to hold that she took a fee; but such is not the case. The will expressly limits her right to dispose of the property by will. She is given power to dispose of only one-half. By giving her full

power to dispose of the property during her lifetime, but limiting her power to dispose of it at her death, it is perfectly apparent that the testator did not intend to give her the property in fee, with the absolute power of disposition. We therefore conclude that this case falls within the rule laid down in Anderson v. Hall's Admr., 80 Ky., 91, and McClelland's Ex'r. v. McClelland, &c, 132 Ky., 284. Our conclusion is further strengthened by the contemporaneous construction placed on this will by the devisee, Mrs. Bowling, and her husband's brothers soon after Dr. Bowling's death, a construction which seems to have been fully acquiesced in by all the parties up to the time of the granting of this appeal, which took place more than 30 years after the will was probated. We, therefore, conclude with the chancellor that Mrs. Bowling acquired in the property devised only a life estate, with power of disposition during her lifetime. There being on hand at her death a considerable portion of the devised estate, and she having power to devise only one-half thereof, the remaining half passed under the will to Dr. Bowling's three brothers.

The next question is: Is the judgment proper in decreeing that Helen Wood and her brothers were entitled to 40-154 of what was left, and that the Angels were entitled to only 114-154? In this connection it is insisted that Mrs. Bowling had no right to convey to R. C. Bowling and J. M. Bowling the 140 acres of land which she did convey to them, and thus prejudice the rights of Helen Wood and the other children of the deceased brother, Henry Bowling. It is therefore argued that for the purpose of determining the interest of Helen Wood and the other children of Henry Bowling in the property remaining at Mrs. Bowling's death, the land conveyed to R. C. and J. M. Bowling should be brought into hotchpotch, and the interest of Helen Wood and others determined on that basis. The circuit court, however, held that Mrs. Bowling had the right to dispose of the whole of the estate during her lifetime. In this construction of the will we concur. It matters not, therefore, what may have been her purpose in making the conveyance to the two Bowling brothers, she had the undoubted right to convey the land. Indeed, she could have sold it to them and disposed of the money, or she could have given it to them if she so desired. It cannot be said, then, that Henry Bowling's children are entitled to any portion of

the land which Mrs. Bowling, under the will, had the right to dispose of. Being entitled to only one-third of one-half of what remained, their rights should have been adjudicated on this basis, and not on the basis of what might have remained had Mrs. Bowling not made the conveyance to the two brothers of Dr. Bowling. It follows, therefore, that Helen Wood and her two brothers, George S. Bowling and J. M. Bowling, were not entitled to 40-154 of the net proceeds of the 154 acres of land which were subsequently sold, but only to one-sixth of such proceeds. It appears that prior to the entry of the judgment, Helen Wood purchased the interests of her brothers.. As the judgment below is conclusive on Mrs. Angel, the life tenant and she is not, therefore, entitled to recover, the infant appellants are entitled to the difference between what Mrs. Wood received and one-sixth of the net proceeds of the farm, without interest, payable on their mother's death. Mrs. Wood will, therefore, be given the privilege either of paying this difference into court and drawing the interest thereon herself during the lifetime of Mrs. Angel, or of executing bond with surety approved by the court, conditioned to pay said difference to the infants on their mother's death. Mrs. Wood will also be permitted, by amended petition, to assert any claim she may have against her brothers, J. M. and George S. Bowling, for their *pro rata* share of such difference, and upon this question the parties may agree on the facts or take further proof, if necessary.

It is next insisted that as the original action was brought merely to settle Mrs. Bowling's estate and sell sufficient land to pay her debts, it was improper to engraft thereon the action to construe Dr. Bowling's will and to adjudge therein the rights of the various claimants, and to direct a sale of the remainder of the land on the ground of indivisibility. It is further insisted that the infants were not properly before the court in the proceeding to sell the remainder of the land. In bringing the settlement suit the administrator had to make the Angels and their children and Mrs. Wood and her brothers parties defendant in order to determine what their rights under the will were, and in order to pass title to the purchaser of any land that it was necessary to sell in order to pay Mrs. Bowling's debts. In this proceeding the infants were properly served with process, and defense made for them by a guardian *ad litem*. The same

is true as to the original answer and cross-petition against them by Helen Wood and others. They were again served with process and an answer filed for them by their guardian *ad litem*. While Helen Wood and others originally asked for a partition of the land, in their amended answer and cross-petition they merely changed the relief which they had asked in their original answer and cross-petition. It is true no process was served on the amended answer and cross-petition. Proof was taken on the question of indivisibility, and two or three witnesses testified that, in their opinion, the 154 acres of land could not be divided without materially impairing its value or the value of the interest of Helen Wood and her two brothers, who were the plaintiffs in the cross-petition. We see no good reason why the construction of Dr. Bowling's will and the adjudication of the rights of the various claimants thereunder could not properly be made in this action. It is not necessary to resort to several suits where the same results may be accomplished in one. The construction of the will and the adjudication of the rights of the claimants thereunder are so related to the original action that the questions may properly be presented in that action. The infants being properly before the court, so far as the will and the respective interests of the other claimants were concerned, it was entirely proper for the court to determine, even under the original answer and cross-petition against the infants, whether or not a partition of the lands should be made, or they should be sold on the ground of indivisibility. It is not material, therefore, that no service of process was had on the amended answer and cross-petition, which merely changed the form of relief asked by the cross-petition. Having jurisdiction of the parties and of the subject matter, the court had the power either to partition the lands or to sell them, if satisfied from the pleadings, exhibits and proof that the land could not be divided without materially impairing its value or the value of the cross-petitioners' interest therein. While it is true that there remained two separate tracts of land, one of about 90 acres, and one of about 60 acres, the Angels were entitled to the whole of either one of these tracts and to a portion of the other. In that event, Helen Wood and her brothers would have been required to take a very small portion of one of the tracts. Taking into consideration this fact, and the further fact

that there was other evidence of indivisibility, we see no reason to disturb the judgment adjudging the land to be indivisible, and directing it to be sold.

Complaint is made of the fact that certain attorneys' fees were improperly allowed in the action. The propriety of the court's action in this respect cannot be reviewed, for the attorneys are not parties to this appeal.

About the year 1895, M. L. Fugate was appointed trustee of Albert M. Angel and Lizzie Angel, his wife, and of their infant children. He accepted the appointment and executed bond for the faithful performance of his duties. On April 29, 1909, Lizzie J. Angel and M. L. Fugate, trustee, filed a petition in equity against R. H. Fugate and Lizzie J. Angel's infant children, wherein plaintiffs sought authority from the chancellor to apply the sum of $458.51, in the hands of M. L. Fugate, trustee, to the payment of a mortgage for $1,000 executed by Albert M. Angel and his wife to R. H. Fugate on a tract of 100 acres of land in which Albert M. Angel and his wife had a life estate, with remainder to their children. The court granted the relief sought and directed the trustee to pay out the money. The guardian *ad litem* prosecuted an appeal to this court. The case was reversed. Some time thereafter the case was re-docketed, and the Angels asked for a rule against M. L. Fugate requiring him to settle his accounts as trustee. They also filed a petition attacking the mortgage to R. H. Fugate on the ground of no consideration, and on the further ground of over-payment. It appears that some years prior to the filing of this action Lizzie Angel and her husband, A. M. Angel, filed an action in the Logan Circuit Court against M. L. Fugate, their trustee, wherein they asked permission to invest in a tract of land then belonging to Ezra Offutt, the money which Fugate then held as such trustee. There was a dispute between the Angels and Fugate as to the amount of the trust fund. The case was referred to the master commissioner to ascertain and report the amount of money in the hands of Fugate as trustee. The master commissioner filed his report, and this report was in effect confirmed by the chancellor. In response to the rule against Fugate in this action he pleaded the aforesaid settlement in bar of any recovery prior to the date of the settlement, and set up the amount remaining in his hands after the investment in the farm of 100 acres, and stated his willingness to pay interest thereon at the

rate of six per cent from that time to the date of settlement. He also pleaded certain payments made by him as trustee to Albert Angel and wife out of the income of said fund since that time. To the petition attacking the mortgage, M. L. Fugate and R. H. Fugate were both made parties. On final hearing the chancellor adjudged that the mortgage in question had been overpaid to the extent of $334.39, and M. L. Fugate, as trustee, was charged with this sum on the ground that though the mortgage was executed to R. H. Fugate, their accounts were kept in such manner and payments thereon were made in such a way that it was impossible to separate M. L. Fugate from his brother in the transaction. M. L. Fugate, trustee, was also charged with the sum of $458.51, the amount in his hands at the time of the settlement with the master commissioner in 1902, together with six per cent interest thereon up to June 15, 1912. He was also charged with other sums, which, together with the $334.39 over-payment on the mortgage note, and the $458.51 and interest, aggregated the sum of $1,143. It was adjudged that he then held that amount of money in his hands, which he was required to hold, disburse and manage as required by the terms of the trust. From the judgments so entered, the Angels appeal, and the Fugates have prosecuted a cross-appeal.

It would extend this opinion to too great length to consider in detail the various items going to make up the amount of money furnished by the Fugates on the faith of the mortgage. The evidence leaves no doubt that the $1,000 was not furnished to the Angels at the time of the execution of the mortgage. Whatever money was furnished was simply paid out by the Fugates to discharge debts owing by the Angels. After carefully considering the evidence, we see no reason to change the finding of the chancellor either as to the amount of money so paid out or the amount of the payments made on the mortgage. It is earnestly insisted by the Fugates that no recovery should be had by Mrs. Angel for the reason that she and her husband not only executed the mortgage, but recognized its validity for several years. In addition to this, Mrs. Angel sought in this action to have the remainder of the trust fund in the hands of M. L. Fugate, trustee, applied to the payment of the mortgage debt. Furthermore, upon the return of this case she actually paid the balance due on the mortgage. Her conduct in this respect

however is not conclusive of the fact that the consideration represented by the mortgage was actually paid. It is simply a circumstance to be considered in determining the question of consideration. The case must be treated from the standpoint of the relation of trust and confidence existing between the Angels and their trustee. The evidence makes it plain that the Angels relied on their trustee. He seems to have attended to all their business for them. Their mere recognition of the mortgage, based on their confidence in him, cannot be accepted as concluclusive of the validity of the mortgage, or of the consideration therein expressed, when, as a matter of fact, the Fugates themselves were unable to show by competent evidence that the full amount of the alleged loan represented by the mortgage was ever furnished. Nor do we see any reason to reverse the judgment against M. L. Fugate because he is made liable for the return of money, which it is claimed was paid to R. H. Fugate. While R. H. Fugate is the nominal mortgagee, the fact, nevertheless, remains that he and M. L. Fugate kept a joint acaccount in bank, and whatever payments were made on·the mortgage were made by M. L. Fugate, and that all credits thereon were, as a matter of fact, paid to them jointly. In view of these circumstances, he will be treated as the joint mortgagee, and held liable for any overpayment on the mortgage debt. If, as a matter of fact, M. L. Fugate as trustee is required to pay back money which is really due by his brother, he may, as provided by the judgment, obtain judgment against his brother for the amount so paid.

We agree with the chancellor that the settlement made by M. L. Fugate as trustee in the action of A. M. Angel, &c. v. M. L. Fugate is conclusive. In this action the chancellor took the amount of money then in his hands and charged him with it, together with interest thereon up to the time of the judgment. Complaint is made of the fact that M. L. Fugate was not allowed credit for the various sums paid out by him by virtue of the judgment which was afterwards reversed on appeal. The judgment was not superseded. Having paid out the money under and by virtue of said judgment, the judgment protects him to the extent of the costs paid, but not to the extent of the sum paid R. H. Fugate, because that was in effect a payment to himself. On a return of the case he will be given credit for the amount of the costs paid.

The judgments appealed from in the case of Walter Angel, &c. v. M. Helen Wood, &c., are affirmed as to W. S. Gambill, administrator, M. L. Fugate, R. H. Fugate and Peoples Bank of Adairville, and also as to Helen Wood in her own right and as executrix of her husband, and as to J. M. Bowling and George S. Bowling, with the exception of that portion of the judgment of October 13, 1894, adjudging that Helen Wood and her husband and J. M. Bowling and George S. Bowling were entitled to 40-154 of the 154 acres ordered to be sold, and directing that bond for 40-154 of the purchase money, after the payment of the costs, be taken to Helen Wood and B. S. Wood. That judgment, to the extent indicated, is reversed with directions to enter judgment as hereinbefore directed. Appellants and Mrs. Woods will each pay one-half the costs of this appeal.

The judgment in the case of A. M. Angel's Administratrix, &c. v. M. L. Fugate is affirmed on the original appeal and reversed on the cross-appeal, with directions to allow M. L. Fugate, trustee, credit for the amount of costs paid out by M. L. Fugate, trustee, pursuant to the judgment of October 12, 1909, in the action of Lizzie J. Angel, &c. v. R. H. Fugate, &c.