## Harrison v. Harrison.

(Decided February 7, 1912.)

## Appeal from Madison Circuit Court.

1. Finding of Chancellor—Rights of Parties.—Held that the Chancellor had the entire record before him and in our judgment reached a wise and just conclusion as to the rights of the parties and we will not disturb his finding.

2. Attorney's Fees.—Only one attorney's fee is ever allowed to be taxed under the statute.

3. Allowance of Alimony.—In ascertaining what is a just sum to be allowed as alimony the question of fault, of aggravation, morality and sundry like considerations must be weighed by the Chancellor in the exercise of his sound judgment.

ALLEN D. COLE for appellant.

THOMAS D. SLATTERY and GEORGE W. ADAIR for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming on the original and cross-appeals.

Appellant and appellee were married in Mason county, Kentucky, in the year 1884. They lived together on appellant's farm for a matter of twenty years. Differences arose between them which resulted in a written contract; which later was merged into a contract of date May 6, 1905. In this last named contract it is first recited that they had settled their differences and desired to live together as husband and wife; that the husband should pay to the wife $300.00 per year during her life for her own separate use, and was to maintain her in addition; that each party should retain his or her distributable rights in the property of the other, and that each party should use, control and dispose of his or her property as either might desire. The differences had become so pronounced, however, that this contract did not achieve the desired ends, and Mrs. Harrison removed to Maysville. She there was engaged for a while in keeping a boarding house, and then in conducting a millinery shop. In January, 1909, Mrs. Harrison sued Mr. Harrison for a divorce and alimony. She charged that they had lived apart for five years without cohabitation; that the husband had treated her in a cruel and inhuman manner; all without fault upon her part. By amendment she set up the above named contract of May 6, 1905, and asked for an enforcement of it. The husband answered,

denying the allegations of her petition; by a second paragraph, in nature a counter-claim, praying a divorce from her, charging one year's abandonment, and that she had been guilty of such lewd and lascivious conduct as to prove her unchaste. Issue was joined on both the petition and counter-claim. In a separate action Mrs. Harrison had also sought recovery against Mr. Harrison upon the above named written contract, setting up certain payments made by him, certain accrued and unpaid installments, and asking judgment for the balance. The two actions were consolidated, a voluminous record of proof taken and judgment entered in the consolidated actions in April, 1911. The judgment granted the prayer of Mrs. Harrison's petition and divorced her from her husband. It further awarded her $1,600.00 in full of all alimony and in full of anything which she might be entitled to under the contract. She excepted to so much of the judgment as failed to allow her a sum in excess of $1,600.00 and as failed to decree a specific performance of the contract. Mr. Harrison excepted to the money judgment against him and appealed from that part of the judgment. Mrs. Harrison asked and was allowed a cross appeal. The record is before us, therefore, on both his appeal and hers.

It could accomplish no good purpose for us to set out at length the unhappy story disclosed by the testimony, nor to recount the various domestic differences which led up to the estrangement between these parties. The record discloses that Mr. Harrison was a man of gruff demeanor; that his inclination was to stay at home and not engage in the social life of his community, especially in the activities of church work, in which Mrs. Harrison seems to have had a considerable interest. The record likewise discloses that Mrs. Harrison was of sudden and sometimes violent temper. It does not disclose such degree of mutual marital forbearance, sympathy and tenderness as might be expected of both parties of the comfortable estate and excellent rural associations of which these people were possessed and with which they were surrounded. Sometimes, indeed, the differences between them were so violent as to result in blows, harsh and violent terms, and bodily assaults, both reprehensible and deplorable. We have searched the record with care and are unable to say that Mr. Harrison was without fault. We are equally unable to say that Mrs. Harrison was without fault. The chancellor

had the entire record before him, and in our judgment reached about a wise and just conclusion as to what was right between the parties. We will not disturb his finding in the matter of the money settlement; and, of course, we are without power to reverse his finding as to the divorce.

Several incidental and subsidiary questions are presented by the appeal and cross appeal. Mrs. Harrison, for instance, complains that she was not allowed any attorney's fee under the construction placed by the court in sundry cases upon Section 900 of the Kentucky Statutes. Upon this point, however, there is a failure of proof. In the case of Schneider vs. Schneider, et al., 64 S. W. 845, an unreported case, this court said that the question of what was a reasonable fee, like any other question, must be determined by the evidence, as to which each party should have opportunity to be heard; and that the reasonableness of such a fee was a fact to be ascertained as any other fact in issue in judicial proceedings, by evidence. No motion was made for an allowance. It is true that the prayer of the petition embraced a prayer for such an allowance; but in the regular preparation of the case no testimony was introduced to show what would be the reasonable value of the service of one attorney. The court, therefore, had nothing before it upon which it might base an allowance. Nor could the court reasonably assume what would be the fair fee of a single attorney in the entire case. She was represented by more than one attorney, making it doubly difficult to say just what would be a fair fee for one attorney. Only one attorney's fee is ever allowed under the statute named.

There is another rule which upholds the trial court in its refusal to make any allowance for an attorney's fee in this case. In the case of Ballard v. Caperton, 2 Met., 414, this court said that in all such cases the husband is bound to pay the costs of both parties, including a reasonable compensation to the wife's attorney, no matter what the result of the suit may be or upon what cause it may have been terminated, unless two things are made to appear in the action—first, that the wife is in fault, and second, that she has ample estate to pay the costs; that these two conditions must concur in order to exempt the husband from the liability imposed by the statute. The same doctrine is reiterated in the case of Steele vs. Steele, 119 Ky., 466. Under the

facts proven in this case, as above set out, we have not been enabled to find that the wife was not in fault. The record also discloses that she had sufficient means of her own to compensate her attorneys for their labor.

The cases of Woodruff vs. Woodruff, 121 Ky., 784, and Hite vs. Hite, 142 Ky., 283, both came up to this court involving the question of an allowance to the wife's attorney in divorce proceedings. In both cases as in this there was involved the recovery upon a written contract made by the husband for the benefit of the wife. As will be pointed out hereafter, much of the recovery in this case was predicated doubtless upon the written contract. In the two cases named no attorney's fee was allowed, because of the contractual element entering into the litigations. We think that they are decisive as well of this feature of Mrs. Harrison's case.

It is complained also that the trial court should have enforced the carrying out of the contract for an annual payment of $300.00 and maintenance to Mrs. Harrison during life. In the first place, it is proper to remark that in the case of Moayon vs. Moayon, 114 Ky., 855, a contract similar to this was specifically upheld as a binding agreement between the husband and wife. The court there had under discussion the legal obligation of the husband to support the wife and their mutual obligation to the marital relation to live together; and the question based upon these obligations as to whether a contract to do what was already their legal and moral duty to do, was valid. The court first commented upon an agreement of the husband to support the wife in contemplation of their living apart, and added:

"Certainly, if an agreement between husband and wife, settling the obligation of the husband to provide for the wife, in contemplation of their living permanently apart, will be specifically enforced as being based upon a sufficient legal consideration, and as being not contrary to the policy of the law, a fortiori must be a contract between them under like conditions founded on consideration of the restoration or preservation of the marital relation."

We find, therefore, that to the extent of urging that the contract for the annual payment and maintenance was a valid contract the position of the appellee is sound. Let it be remembered, however, that the consideration of that agreement was the desire of the parties to reassume and continue in the marital relation.

That consideration failed, and Mrs. Harrison moved to Maysville. It must not be understood that we mean to say that had Mrs. Harrison been without fault and had been forced by circumstances so hard or so repellant as that she could not, with comfort and with reason, endure them, she would not have had the right to leave her husband's home, and yet insist upon her contract. That condition, however, did not obtain in this case. The conditions to which she was objecting, after the execution of that contract, were no harder, as appears from the testimony, than they were at the time she entered into it. Nor was her conduct any more without fault than it had been before. When she left her husband, therefore, after the execution of this contract, she deprived that contract of any valid consideration to support it. The Circuit Court did not err in refusing to carry it out.

It is argued for appellant that it was error to award an execution upon the judgment. The appellant cites in support of his position an expression in the case of Gerrein's Administrator vs. Michie, etc., 122 Ky., 250, where it was said that the judgment there in question was not one upon which an execution could issue, as from the nature of the case it could only be enforced by rule. The judgment there was for monthly installments of $30.00. In the same opinion, however, it is remarked that a judgment in favor of the wife for alimony stands just like any other judgment. Certainly it is a judgment upon which execution should with entire propriety be allowed.

It is likewise argued upon behalf of Mr. Harrison that an allowance of alimony can not be made unless there is proof of the age of the wife and her expectation of life. The case of Gooding vs. Gooding, 104 Ky., 755, is cited to sustain this proposition. That case remarks that in the entire absence of proof as to the wife's age and expectation of life, the amount to be paid can not be intelligently determined. In the case at bar the age of the wife is proven and the expectation table is incorporated in the statute. In the proper ascertainment of what sum is just to be allowed as alimony in any given case numerous elements of fact must enter, The social status of the parties, their customary surroundings in life, the questions of fault, of aggravation, of morality and sundry like considerations must be

weighed by the Chancellor in the exercise of his sound discretion. The statute in itself, in its phraseology, best expresses this idea. Section 2122 of the Kentucky Statutes provides that the allowance shall be such as shall be "deemed equitable." In arriving at what was equitable in this case the Chancellor took into consideration the written contract and based his award in part upon that contract. How much of the sum allowed was allowed upon the contract the judgment does not disclose. Considering the entire state of the record, we are persuaded that that contract was responsible in great part for the allowance of the sum that was allowed.

A point is made against the allowance, based upon an affidavit found among the papers in the record, showing the altered condition in the life of Mrs. Harrison, and that she no longer needs any sum from Mr. Harrison. That affidavit, setting up an event transpiring since the judgment in this case, has no place in this record. Its effect upon the rights of the parties as fixed by the judgment should not be and is not considered.

As was said in the beginning, it could serve no good purpose to set out the unpleasant details ending in this unhappy denouement of twenty years of married life. It suffices to say that the Chancellor's judgment was, in our opinion, an equitable ascertainment of what was just between the parties.

For the reasons given the judgment is affirmed upon the original appeal, with damages, and is affirmed upon the cross appeal.