## Walker, et al. v. City of Richmond.

(Decided May 30, 1924.)

### Appeal from Madison Circuit Court.

1. Municipal Corporations—Contract for Exemption from Assessment Held Not Validated.—City cannot validate a contract to relieve property from future assessment for sidewalk and pavement purposes by merely electing to treat it so and retaining a strip as a part of the street given as consideration.

2. Estoppel—Setting up Contract Relieving Property from Assessments in Return for Strip Held Not to Constitute Estoppel Against Reliance on Contract as Defense in Subsequent Suit.—Where city entered into ultra vires contract to relieve from future assessments for sidewalk and paving in consideration for strip of land, and subsequently sued to recover assessment for sidewalk, and owner set up such contract, and city elected to take strip and not to en-

force assessment, held, that landowners were not estopped in subsequent action by city to enforce paving assessment to rely on contract as excusing payment of assessment for paving, or to require return of strip, etc.; election of city to take strip and pay for sidewalk having no effect and there being no inconsistency between defenses in two actions.

3.  Evidence—Contents of Lost or Destroyed Contract May be Shown by Parol.—Contents of a lost or destroyed contract of a city required to be in writing may be shown by parol proof if originally executed according to forms of law.

4.  Municipal Corporations—Form of Contract Held Not to Prevent Owner from Reclaiming Property or Receiving Pay Therefor from City.—Fact that contract by city to relieve land from payment of assessments for street improvements in consideration of a strip of land for street purposes was not in proper form would have no effect upon right of property owners to either be permitted to reclaim strip of property or to receive pay therefor.

5.  Municipal Corporations—City Obtaining Land Under Invalid Contract May Not Retain it and Refuse to Pay.—A city obtaining a strip of land to widen a street under an ultra vires agreement to excuse payment of future assessments for street improvements by remaining portion of land cannot keep property and refuse to pay for it.

O'REAR, FOWLER & WALLACE and A. R. BURNAM, JR., for appellants.

H. C. RICE, JOE P. CHENAULT and J. J. GREENLEAF for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

The appellants and defendants below, J. M. Walker and others, are the owners as devisees of Joel J. Walker, deceased, of a parcel of land situated in the city of Richmond and fronting on Lancaster avenue a distance of 434.4 feet on its east side. By appropriate pleadings, the correctness of which is not questioned, the city reconstructed Lancaster avenue at a cost of one-third to the city and one-third to the property owners on either side thereof, and the cost against defendants' property was assessed at $2,648.46, which is also admitted to be correct. The defendants, failing and refusing to pay the assessment or any part of it, the city, as plaintiff below, brought this equity action against defendants to enforce the collection of the amount by having it adjudged a lien against the property. The answer admitted the improvement of the avenue, and the correctness of the

amount assessed against defendants' property, but denied their liability for the assessment on the ground that their ancestor, Joel J. Walker, in about the year 1873 entered into a written contract with the city whereby in consideration of his setting back his front fence twelve feet, so as to widen the avenue to that extent, the city would forever relieve the property from local assessments for street or sidewalk purposes. It made its answer a counterclaim and alternatively prayed that if the contract for any reason was unenforceable, then it recover judgment against the city for the value of the 12-foot strip either as of the time when the contract was made with interest therefrom, or for its value at the present time, but if the city should not elect to pay for the land at either valuation, then defendants prayed that the strip be restored to them and they be permitted to reclaim it by setting their fence upon the original line, and if that should be done then they asked that they recover judgment against the city for the cost of removing a sidewalk built on the strip by it some eight or ten years prior. A demurrer was filed to the answer and counterclaim, but it does not seem to have been acted on. Certain portions of that pleading were stricken upon motion made for that purpose by plaintiff, and in its reply, the city denied that any such contract was ever made or entered into between it and Joel J. Walker. It further pleaded therein facts which its counsel insist constituted an estoppel against defendants to rely on the contract as pleaded in their answer and counterclaim. The alleged estopping facts so pleaded were that some time prior to 1915 the city constructed a sidewalk on the 12-foot strip under the claimed right to assert a lien for its cost price ($685.23) against the abutting property, and that defendants failed and refused to pay it; that thereafter the city instituted an equity action in the Madison circuit court to enforce its lien therefor against the same property involved herein, and that defendants then relied upon the same contract rights relied on herein, but in pleading the contract in that case they did not claim that the exoneration by the city of the property, forming the consideration for the contract, extended any further than to relieve the property from future special taxation for the construction of *sidewalks,* and that nothing was said in the answer in that case about the exoneration extending to any other future public improvements along, upon or under the street than sidewalks; that the same

alternative prayer was made in that answer, which was
also made a counterclaim, as was made by defendants in
their defense in this case; that the circuit court in that
case sustained a demurrer to defendants' pleading, and
they declined to plead further, which was followed by a
judgment enforcing a lien for the construction price of
the sidewalk therein involved; that defendants prosecuted
an appeal to this court and the judgment was reversed
in an opinion reported in 173 Ky. 26, and that upon a re-
turn of the case the city elected to retain the strip of
ground as a part of the avenue, with the burden upon it
to forever thereafter construct and maintain *sidewalks*
in front of the lot under the terms of the contract, as al-
leged in that case, *i. e.*, that the property should be exon-
erated from any future assessment for *sidewalk* purposes
only, and that action was dismissed by the city paying
for the cost of the sidewalk. It was claimed by the city
in this case that the defendants are now estopped to
enlarge the terms of their alleged contract so as to ex-
onerate the property from any public improvement other
than for the construction and maintenance of *sidewalks*
because it so confined the terms of the contract in its
pleading in the 173 Ky. case. The defendants' demurrer
filed to the pleaded estoppel was overruled with excep-
tions.

The opinion in the 173 Ky. case held that the alleged
contract, the existence of which was not inquired into at
that time, was void, as being beyond the power of the
city to make, since its effect was to allow the city to con-
tract away its power of taxation and was *ultra vires,*
against public policy and, therefore, void. That being
true, the city could not render it valid by merely electing
to treat it so, and to retain the strip as a part of the
street and at the same time relieve the owner of the prop-
erty of the burdens of the special taxation. To permit
the city to give validity to the contract in that manner
would allow it to do by indirection that which it could
not do directly. 19 R. C. L. 1060-1061, paragraphs 349
and 350. In other words, the effect of the opinion re-
ferred to was that no rights were acquired under the
supposed contract except the right of defendants to be
placed *in statu quo*, upon the theory that no one acquires
any rights to enforce a totally void contract. The rights
of the parties were thereby rendered somewhat analogous
to those of a vendor and vendee under an oral contract
for the sale of land of which the vendee had taken posses-

sion and erected improvements, except that the vendor in that case might legally ratify the contract of sale, whereas the city had no power or authority to ratify the contract exonerating the property of defendants from all future taxation of the character involved. So that, the ultimate effect of the city's action upon a return of the first case to the circuit court was to abandon that action, pay for the cost of the sidewalk and leave the matter in the same condition it was before that action was filed.

Neither do we conclude that the facts alleged constituted an estoppel against defendants relying on the contract as a defense to the matters involved in this action. It is not claimed that an estoppel of record arose from any order or adjudication made or rendered in the former case; but it is insisted that the answer of the defendants therein, coupled with the conduct of the city after a return of the case to the circuit court, which action on its part it is insisted was influenced by this court's construction of the answer, did create an estoppel against defendants from enlarging the terms of their supposed contract in this case, but with which we are unable to agree. In disposing of this question, we will cite and refer to 21 Corpus Juris, which appends to the text supporting cases from this and practically all other courts. In discussing the creation of an estoppel of a litigant who assumes a different position in his pleadings in one case from that assumed by him in another prior one, the text in the volume referred to, on page 1223, substantially states the rule to be that the litigant would be estopped to assume a different and inconsistent position in the later case from the one he assumed in the prior one, provided his adversary was induced to act on the first assumption to his detriment, and but for which the action by the adversary would not have occurred. But, in order for such effect to prevail, as stated in the text, "It is necessary, however, that the claim or position previously asserted or taken should have been successfully maintained, that it should be actually inconsistent with the position presently taken, and that it should not have been taken through the fault of the adverse party," plus the further fact that the party claiming the estoppel should have been misled thereby, and acted in reliance thereon, "and that his rights would be injuriously affected if his opponent were permitted to change his posi-

tion." That text, after all, but states the fundamental elements of an estoppel *in pais* and contains nothing new. In elaboration of that text with reference to the creation of an estoppel through a position assumed by a pleading in a prior case, and in setting forth the elements necessary to effect the estoppel, the text, on pages 1233-4, paragraph 239, says:

"In order to estop a party by allegations or admissions in pleadings in a former action or proceeding it is essential that the issues involved should be the same, and that the allegations or admissions must have been material to the matters adjudicated in the former action. Also there must have been a determination of the prior action, or at least the allegations or admissions must have been acted on by the court in which the pleadings were filed or by the parties claiming estoppel. There can be no estoppel where the admissions or statements were made through mistake, or without full knowledge of the facts, especially where the facts were within the knowledge of the adverse party; or where there is no actual inconsistency between the averments of the pleadings in the former action and the position taken in the subsequent action. Also the party claiming the estoppel must have been ignorant of the real facts, and, in reliance on the statements or admissions, he must have changed his position and sustained prejudice by reason thereof."

The question, therefore, is, whether the answer of defendants in the prior case, which confined the operation of the contract to exoneration from the maintenance of sidewalks alone, without expressly saying that the exoneration was limited to that particular improvement, estops them from asserting in this case that the exoneration also extended to all other public improvements in or upon the avenue or street in addition to the sidewalk? We do not think so in the light of the limitations contained in the cited text. Among the requisites therein prescribed for the creation of the estoppel are, that the subsequently assumed position in the later pleading must be *inconsistent* with that assumed in the former one and upon which the adverse litigant has acted to his detriment. Furthermore, that in each of the actions wherein the pleadings were filed "the issues involved should be the same," and "There can be no estoppel . . . where

there is no actual inconsistency between the averments of the pleadings in the former action and the position taken in the subsequent action." Furthermore, that there will be no estoppel in any event unless the party claiming it was "ignorant of the real facts." The text relied on by counsel from the same volume on pages 1064, 1067 and 1202 contain nothing militating against or inconsistent with the text to which we have above referred, since the cited references by plaintiff's counsel deal with the distinguishing features of an estoppel by record and one *in pais* arising from averments in a prior pleading and those references do not attempt to point out the essentials necessary to create the estoppel *in pais* arising in that manner.

In the former case in 173 Ky. the defendants were called upon to defend the action wherein the right to assert a lien against their property for the construction of *sidewalks* only was involved; and it was necessary therein for them to rely on their supposed contract only to the extent of defending the particular right then attempted to be asserted by the city. The action involved nothing else but that particular right, and did not extend to other and different improvements than sidewalks. Independently of that consideration, it did not appear in that case that the city was ignorant of the fact as to the contents of the contract; nor was it induced by the defendants' pleading in that case to change its attitude to its detriment, since as we have seen, it made no change whatever in its attitude, but dismissed the case and paid for the sidewalk, which restored matters to their former status before the action was filed. It will not do to say that there was a change in the city's rights growing out of its electing to dismiss that suit and pay for the sidewalk involved in that case, since, as we have seen, it had no right to accept the strip of land freed from such burdens in any such manner, because of the reason hereinbefore stated. We are, therefore unable to agree with learned counsel for plaintiff, or with the trial court who so held, that the matter relied upon is sufficient to create an estoppel.

The next contention made on behalf of the city in support of the judgment below is that the parol proof heard to establish the contract was insufficient for that purpose, since it failed to show that the contract, if executed, was done in the form and manner prescribed for the execution of contracts by municipalities, and in sup-

port of that contention many authorities are cited to the effect that contracts by municipalities must be executed in the way and manner pointed out by law for that purpose. It was agreed by stipulation between the parties that if there ever was such a contract, it was lost or destroyed, and manifestly if it had been shown by the parol proof introduced that it was originally executed according to the forms of law, parol testimony would be competent to prove its contents. They were broad enough as testified to by defendants' witness to exonerate the property from the burden of constructing or maintaining the character of improvements involved, and if we should assume that the oral proof failed to show that the contract was properly executed, still, under our view of the case that fact could have no effect upon the right of defendants to, either be permitted to reclaim the property by moving out their fence to the original line, or to receive pay therefor, as was held in the 173 Ky. case, *supra*. As held in that case, the city should extend either the one or the other of those two privileges to defendants because the contract, although validly executed, was void as being beyond the power of the city to make. The same privilege should be extended if the avenue was widened by Joel J. Walker in consideration of such an agreement, though it was improperly executed, since there exists the same right of restoration to the *status quo* in the case of partially executed contracts, or wholly so on one side, when they are voidable because of a failure to observe some prescribed formality in their execution, as when they are void *ab initio* because of the lack of power in the parties, or any of them to so contract with reference to the subject matter. If the defendants could not rely on the contract, if validily executed, *a fortiori* they could not do so if it was not so executed; and *vice versa,* if the city could not keep the property and refuse to pay for it under a validly executed contract, it could not do so under an invalidly executed one. The essential question in each case necessarily is, whether the contract shall measure the rights of the parties, or shall they be adjudged upon the basis of no contract? Taking that view of the matter, which is the only one to take, it is clear that if the city, as was adjudged in the 173 Ky. case, is not bound by the contract, although validly executed, then it is not bound by it if improperly executed, and in either case it should not be permitted to retain the strip of ground without rendering compensation therefor.

The judgment was correct in subjecting the property to its proportionate part of the cost of the improvements, but it should have gone further and ascertained if there was such agreement though for any reason unenforceable, and if so then required the city to elect whether it would retain the property and pay for it either upon the basis of its valuation at the time the fence was set back with interest thereon or its valuation at present, or to permit defendants to reclaim the property by moving their fence to the original property line. The effect of the judgment was to dismiss the prayer of the counterclaim for either of the alternative reliefs demanded and to foreclose defendants' rights if there was such agreement and to that extent it was erroneous. The demurrer to the reply and amended reply pleading the estoppel should have been sustained, and upon a return of the case the city will be required to elect whether it will retain the property and pay compensation therefor or restore it to defendants, if the agreement is proven. If it should elect to keep the property the parties may take testimony upon the measure of compensation. Inasmuch as the court appears to have founded its judgment upon the pleaded estoppel, which it held good, but which we find was erroneous we think the justice of the case requires that both parties should be permitted on a return of the case to take additional proof upon the issue as to whether there was ever such an agreement as the one relied on.

Wherefore, the judgment in so far as it subjected the property to the cost of the improvement, is affirmed, but in so far as it denied defendants any relief it is reversed for proceedings consistent with this opinion.