## Theophanis v. Theophanis.

(Decided June 24, 1932.)

W. C. MARSHALL and E. C. O'REAR, for appellant.

L. W. MORRIS and MARION RIDER, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

On February 14, 1931, Lillian Theophanis (plaintiff) was given an absolute divorce from George J. Theophanis (defendant). She was awarded $1,000 alimony and $100 attorney's fees, from which judgment she appeals, and asks $14,000 alimony and $1,500 attorney's fee, and defendant has prosecuted a cross appeal asserting the court erred in the following particulars: (a) In awarding a divorce to plaintiff; (b) in allowing her any alimony; (c) in allowance of $100 to her attorneys; (d) in holding plaintiff and defendant were lawfully married; (e) in refusing to annul this marriage because of fraud alleged to have been perpetrated upon defendant by plaintiff; (f) in refusing to grant him a divorce upon his cross-petition wherein he sought such upon the ground that plaintiff had been guilty of such lewd and lascivious behavior as proves her to be unchaste.

These parties were married in Cincinnati, Ohio, on December 14, 1922. Defendant was then about 37 years of age, and had not previously been married. Plaintiff was perhaps 10 or more years his junior, but had been previously married to one Ralph Myers of Cleveland, Ohio, from whom she had obtained a divorce upon the charge of cruelty. The parties to this litigation have never had any children.

Plaintiff is a native of this country, and the evidence shows her to be a woman who has had quite unusual educational advantages; that she is industrious, neat, intelligent, and of a charming personality.

Defendant was born at Elova, Greece; he came to this country in 1905, has been a resident of Frankfort, Ky., since 1909, has been interested in the conduct of a restaurant known as the Manhattan, and was on September 27, 1914, naturalized as a citizen of the United States.

He has had no educational advantages comparable to those had by the plaintiff, and of course has no such familiarity with the English language as the plaintiff.

We shall dispose of his contentions first. His contention (d) is that plaintiff is a mulatto, and that hence he was never lawfully married to her. See subsection 2 of section 2097, Ky. Stats.

Plaintiff is a daughter of Betty Walker Foos and Edward Foos, the latter being admittedly a white man. Betty Walker Foos was a daughter of Joel J. Walker, a whiteman, and a woman referred to as "Mary Jane," but whether she was the wife of Joel J. Walker or not is not established in this evidence. In his will Joel T. Walker makes provision for "my former servant Mary Jane (who has never left me) and her children named 'Bell,' 'Jf. Davis,' 'Bettie,' 'John Morgan,' 'Speed Smith,' 'Jane Taylor,' and 'Annie.' " There is evidence some of these children married colored people and some married white people. Certainly the husband of Bettie Walker Foos was a white man. Litigation by Mary Jane Walker and her children has reached this court. Walker et al. v. City of Richmond, 173 Ky. 26, 189 S. W. 1122, Ann. Cas. 1918E, 1084; Walker et al. v. City of Richmond, 203 Ky. 481, 262 S. W. 628; Richmond Cemetery Co. v. Walker, 97 S. W. 34, 29 Ky. Law Rep. 1252, 7 L. R. A. (N. S.) 155. In this last case these things are said:

"In the month of December, 1903, a child of John Morgan Walker died, and the grave was dug upon the small lot above described, for the purpose of burying the child, when, it was alleged, the appellant did willfully and wrongfully refuse to permit him and his friends to enter the cemetery for the purpose stated, and they were compelled to bury it in a lot belonging to a colored man in the old part of the cemetery. . . .

"The substance of the answer was that the cemetery of the appellant was for the burial of white persons, and that colored persons were not allowed to be buried in it; that it had purchased 3½ acres of ground on the opposite side of the city and donated it to the colored people in which to bury their dead, and it had offered to pay, and was willing to pay, the devisees of Joel J. Walker a full price for this plot of ground."

Thus we have one court proceeding where in "Mary Jane" and her children were regarded as colored people, for the John Morgan Walker who was party to that proceeding was a son of "Mary Jane." There is evidence "Mary Jane" and her children were regarded by the people of Richmond as colored people. Defendant cites the case of Mullins v. Belcher, 142 Ky. 673, 134 S. W. 1151, 1152, Ann. Cas. 1912D, 456, wherein children of one-sixteenth negro blood were held to be colored children; the court there used this language:

"The word 'colored,' as applied to persons or races, is commonly understood to mean persons wholly or in part of negro blood, or having any appreciable admixture thereof."

These things the defendant says are enough to show the marriage of plaintiff and defendant was invalid. That statute, it will be observed, forbids a marriage between a white person and a negro or mulatto. If Mary Jane Walker were a negro, then plaintiff would be a quadroon, and a mulatto, but it is earnestly insisted Mary Jane Walker, if indeed of negro blood, was not of pure negro blood. She had long black straight hair, a very straight nose, high cheek bones, and thin lips. She was of copper color, and had a smooth and beautiful complexion. Certainly there is no showing in this evidence that she was of pure negro blood, and she would have to be so to make of the plaintiff, a mulatto. See McGoodwin v. Shelby, 182 Ky. 377, 206 S. W. 625. We therefore conclude this marriage was valid.

Defendant's next contention is that the plaintiff concealed from him the facts stated above and that he was induced to marry her by a fraud thus perpetrated upon him by the plaintiff, and in support of this he relies upon Wesley v. Wesley, 181 Ky. 135, 204 S. W. 165; 19 C. J., p. 39, sec. 65; McAndrew v. McAndrew, 194 Ky. 755, 240 S. W. 745.

Plaintiff says that before their marriage she told defendant of this rumor prevailing around Richmond regarding her ancestry, and asked him to investigate it. Defendant denies this, but there is in this record a letter alleged to have been written by defendant to plaintiff, in which, among other things, these things appear:

"As to the matter or your family affairs, I thought that over long time ago. . . . I am not

marrying the people or Richmond and their are not interested in my affairs . . . Now dear that thing your must forget."

Defendant denies writing this letter, but, after comparing it with other letters in the record which he admits he wrote, we are not able to say the chancellor erred in finding against him upon this ground.

Considerable proof was taken pro and con upon defendant's contention (f), the recitation of which could do no good. We can well see how the chancellor would not find it sufficient to support a finding the plaintiff was guilty, and yet there was enough to justify defendant, in making this charge, so that it cannot be said that in making it he was guilty of cruel and inhuman treatment. See Sallee v. Sallee, 213 Ky. 125, 280 S. W. 932; Howard v. Howard, 222 Ky. 203, 300 S. W. 598.

The other contentions of defendant will be disposed of in our disposition of plaintiff's contentions, which are these: Plaintiff says that the defendant, George J. Theophanis, without any fault upon her part, has habitually behaved toward her for not less than 6 months last past in such cruel and inhuman manner as to indicate a settled aversion to her and to destroy permanently her peace and happiness.

Plaintiff says that during the past 6 months, and particularly on the 6th day of April, 1929, without fault or like fault upon her part, said defendant so cruelly beat and injured her and attempted to injure her as to indicate an outrageous temper in him and probable danger to her life, and great bodily injury from her remaining with him.

A great mass of proof has been taken, but in all of it there is practically none that bears directly upon the issues, except that of the parties themselves. They had some troubles and arguments about expenditures principally, and there is quite a lot of evidence about the embarrassment that was caused the plaintiff by the failure of the defendant to provide her with enough money to enable her to always meet her bills on demand. The plaintiff is somewhat deaf, and, in order to make her understand him, it was necessary for the defendant to speak a little loud, so that neighbors hearing that concluded he was quarrelling with her, but that is all they heard, just some loud talk; there is no evidence of any

specific thing said in that talk. Plaintiff was not silent at such times, she had a violent temper, was of a nagging disposition, and, as she testifies,

"would argue her point for hours in order to have her way."

In April, 1929, they had a fight, into the details of which we shall not go, but in it defendant struck plaintiff on the side of the head with such force that it fractured slightly a bone forming the outer part of the orbit of her left eye, and it is shown that her hearing in her left ear has been affected thereby. They were fighting, and defendant claims he only struck her lightly and in self-defense, but there is no way to justify such a wallop.

The plaintiff is of a jealous disposition. Defendant, when they were first married, took her to the home of his brother, Steve Theophanis, to live. Steve is blind, and is supported by his brothers. George would bring money and supplies for this family, and, as Steve was blind, would give them to Steve's wife. Plaintiff became intensely jealous of Steve's wife; she says,

"I was so jealous of Mary (Steve's wife) that I was so mad I didn't know what to do."

Steve testifies plaintiff told him that defendant was the father of Mary's two youngest children, and a serious difficulty between Steve and defendant was narrowly averted. Other ugly conduct of plaintiff appears in this record, so that we must say plaintiff is not entirely free from fault, yet we are unable from this evidence to say the court erred in granting this divorce to the wife upon her petition. This brings us to the question of attorney's fees and alimony.

By section 900, Ky. Stats., it is provided:

"In actions for alimony and divorce, the husband shall pay the costs of each party, unless it shall be made to appear in the action the wife is in fault and has ample estate to pay the same."

In Harrison v. Harrison, 146 Ky. 631, 143 S. W. 40, 42, a divorce and $1,600 alimony were granted to the wife. Mr. Harrison appealed, and the wife prosecuted a cross-appeal, and this court in affirming that judgment said:

"We have searched the record with care and are unable to say that Mr. Harrison was without fault.

We are equally unable to say that Mrs. Harrison was without fault. The chancellor had the entire record before him, and in our judgment reached about a wise and just conclusion as to what was right between the parties. . . . Mrs. Harrison . . . complains that she was not allowed any attorney's fee under . . . section 900 of the Kentucky Statutes. . . . In the case of Ballard v. Caperton, 2 Metc. 414, this court said that in all such cases the husband is bound to pay the costs of both parties, including a reasonable compensation to the wife's attorney, no matter what the result of the suit may be or upon what cause it may have been terminated, unless two things are made to appear in the action: First, that the wife is in fault, and, second, that she has ample estate to pay the costs; that these two conditions must concur in order to exempt the husband from the liability imposed by the statute. The same doctrine is reiterated in the case of Steele v. Steele, 119 Ky. 466, 84 S. W. 516, 27 Ky. Law Rep. 120. Under the facts proven in this case, as above set out, we have not been enabled to find that the wife was not in fault. The record also discloses that she had sufficient means of her own to compensate her attorneys for their labor.''

By section 2122, Ky. Stats., it is provided:

''If the wife have not sufficient estate of her own she may, on a divorce obtained by her have such allowance out of that of her husband as shall be deemed equitable.''

The proof indicated plaintiff is worth ten or twelve thousand dollars. The value of defendant's estate is not so clear. A public accountant went over his affairs, made a report of 14 pages, and gave a deposition of 109 pages, but nowhere in all of it are we able to find an answer to the one vital question, What was the net worth of George J. Theophanis when this judgment was rendered?

On May 4, 1929, near the outset of this litigation, Mr. Theophanis made an affidavit he was worth about $15,000. The evidence shows he has invested quite extensively in the stock market, and shrinkages there since the fall of 1929 are well known. We have tried ourselves to arrive at an estimate of his net worth, and our conclusion is that the $1,000 allowance is more than one-third

of his estate, and, when we consider in connection with that more than $2,000 that plaintiff received pendente lite, we are sure that, in view of her own estate, the allowances made her are ample. We do not say $100 is all her attorneys should be paid, but, in view of the citation from Harrison v. Harrison, supra, we feel that it is all the husband should be required to pay. She must pay the remainder. See King v. King, 218 Ky. 9, 290 S. W. 725.

These parties have been represented by able counsel, who have called over 80 witnesses, taken over 1,400 pages of depositions, and filed exhibits by the hundreds. Plaintiff has called in her behalf some of the best people in Frankfort, who say she is kind, affectionate, patient, well-mannered, and altogether charming. In like manner defendant has had some of the best people in Frankfort testify to his good repute for honesty, morality, truthfulness, integrity, good citizenship, etc. Each was to all the world, except each other, all that could be wished, but they have been utterly unable to agree with each other. This case was considered by an able chancellor, and we see no reason to disturb his finding.

The judgment is affirmed on both the original and cross-appeal.