## Sears v. Hull, et al.

(Decided April 16, 1912.)

### Appeal from Perry Circuit Court.

1. Taxes—Purchaser at Tax Sale.—Where a tract of land was described in the assessment as containing 35,000 acres, and the land so described was sold as 35,000 acres, the purchaser at the tax sale was only entitled to 35,000 acres, although the tract of land sold may in fact have contained a greater number of acres.

2. Non-resident—Averments in .Pleading Not Taken as Confessed Against.—Under Section 126 of the Code, every material allegation of a pleading against a defendant constructively summoned and who has not appeared in the action, must be proved.

3. Appellee—How Questions May Be Raised by, on Appeal.—If an appellee desires to have this court pass on questions disposed of by the lower court, he must either pray an appeal in the lower court from so much of the judgment as he complains of, or ask a cross-appeal in this court. If he fails to do either, the judgment will not be disturbed on account of errors against him that are pointed out in brief by his counsel.

J. D. WARD for appellant.

T. T. FORMAN and FORMAN & FORMAN for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

It is alleged in the petition that in 1893 one F. A. Hull conveyed to J. M. Unthank in trust for the benefit of the creditors of Hull, a body of land in Perry County supposed to contain 47,400 acres. In 1894 this land was listed for taxation in the name of Unthank, as trustee, being described "as 35,000 acres in precinct No. 2, and the nearest neighbor thereto as Pres. Campbell," at a valuation of $35,000. The tax due the county on this assessment was $210, and the tax due the State $147.75. No part of these taxes was paid, and the sheriff of Perry county sold the land that was assessed in 1894 in satisfaction of the tax claims, when the State became the purchaser for the amount of the taxes, penalties and commission due the State. The land was not redeemed, or the taxes paid, and in 1903 it was sold by George H. Alexander, revenue agent for the State at large, at public outcry, when R. F. Fields, agent for Austin Fields, became the purchaser at the price of $147.75, and, in December, 1903, the Auditor of the State of Kentucky conveyed the land assessed and sold to Austin Fields in consideration of the payment by him of the purchase price. Afterwards, by regular conveyance from Fields, the land came into the possession of the appellant Sears. In July, 1910, Sears, as party of the first part, and the appellee Cauffiel, as party of the second part, entered into a written contract, whereby Sears sold to Cauffiel 35,000 acres of the land purchased by Fields at the Auditor's agent's sale, and afterwards conveyed to Sears. The contract recites that:

"Said Sears has sold to said Cauffiel 35,000 acres of land located in Perry County, Kentucky, and being that 35,000 acres sold by the sheriff of Perry County on the 12th day of November, 1894, to pay and satisfy the taxes due the Commonwealth and the county of Perry by one J. M. Unthank, the same being described in the sheriff's report of sale as 'being 35,000 acres, nearest neighbor Pres. Campbell, in precinct No. 2,' and being the same tract of land sold by George H. Alexander, revenue agent for the state at large, on the 9th day of November, 1903. * * * The said 35,000 acres being a part of the tract supposed to contain 47,400 acres of land, listed for taxation in the name of J. M. Unthank, as trustee, in the county of Perry; said 35,000 acres to be laid off out of said 47,400 acres in a partition proceeding to be instituted in the Perry Circuit Court, in the State of Kentucky, as nearly adjacent to the nearest neighbor Pres. Campbell as practicable."

In September, 1910, Sears brought this action in the Perry Circuit court against F. A. Hull, J. M. Unthank, S. H. Cauffiel, the unknown widow and heirs of F. A. Hull, the unknown widow and heirs of J. M. Unthank, and the unknown creditors of F. A. Hull, in which, after setting out in substance the facts before stated and stating that he had a good title to the land, prayed "that it be adjudged and decreed that by virtue of the tax sales by the sheriff and Auditor's agent aforesaid and the conveyance from Coulter, Auditor, to Fields, and the mesne conveyances hereinbefore recited, to and including the conveyance of R. F. Fields and wife to this plaintiff, that he is the owner in fee of the 47,400 acres of land described in said deed; and if this court shall hold otherwise, then he prays that it be adjudged and decreed that by virtue of the said tax sales and the subsequent and hereinafter recited conveyances, that he is the owner in fee and entitled to the possession of 35,000 acres of the said 47,400 acres of land, and entitled to have the same partitioned under the judgment of this court, and said 35,000 acres of land set off and conveyed to him in severalty, the same to be set off as nearly adjacent to Pres. Campbell as practicable, in precinct No. 2 of Perry County, in a contiguous boundary, and as nearly adjacent to the waters of Leatherwood Creek as may be done; and, to this end, commissioners be appointed and directed to make such allotment."

Accompanying this petition was an affidavit in due form, setting out that F. A. Hull was a non-resident, and giving the name of his postoffice. Thereupon, Albert Williams was duly appointed corresponding attorney for Hull. In November, 1910, Williams, as attorney for the non-resident defendant Hull, filed a report setting out that he had written a letter addressed to Hull at his place as described in the petition, but had received no reply, and did not know of any defense he could make. In November, 1910, an amended petition was. filed, in which the plaintiff set up that J. M. Unthank had died in February, 1899, and that D. B. Logan was regularly granted letters of administration on his estate. In this amended petition it was further averred that the conveyance by Hull to Unthank was merely for the purpose of appointing Unthank trustee for the benefit of Hull's creditors, and that Unthank took and held the title for no other purpose.

It seems that summons was executed on Logan, as administrator of Unthank, and in a paper filed in the record by Logan it is recited that "he has fully settled his accounts as administrator of Unthank, and further states that said Unthank, as trustee, under the deed of F. A. Hull for 47,400 acres of land made to said Unthank in trust for the benefit of the creditors of said Hull, and mentioned in the petition in this case, so far as this appellee has been able to discover, never took possession of said land, and never took any steps looking towards the execution of said trust, and so far as this appellee is informed and believes, the estate of Unthank is in no ways interested in the issues involved in this appeal; and as such administrator he has no interest in this controversy."

Cauffiel filed an answer, in which after setting up his contract with Sears, he prayed "that his rights be fully protected and that this court will decree that the plaintiff only owns but that he does own in fee the 35,000 acres aforesaid, and that the same be set apart in a contiguous boundary, in Perry County, as nearly adjacent to Pres. Campbell, in precinct No. 2, and on the waters of Leatherwood Creek, as is practicable, and for his costs, and all equitable relief."

No other persons were summoned or entered their appearance or filed any paper or pleading in the case. Commissioners were appointed by the court to "survey

and allot the plaintiff out of the land hereinafter de-. scribed 35,000 acres thereof; * * * and they will make said allotment, if practicable, in one contiguous boundary, and upon or near the waters of Leatherwood creek in said county; they will report said allotment under this order to the next term of this court, accompanying their said report with the plat and survey of the land so allotted, and, if practicable, they will include in their report the patents, by their number, embraced in whole or part by said survey and allotment.'' In pursuance of this authority, and in May, 1911, they reported that ''they had allotted to Sears 35,000 acres .of land described in the judgment, as will be shown in the accompanying plat, which is filed herewith and made part of this report.'' To this report, Sears filed exceptions, because there was only allotted to him 35,-. 000 acres. The non-resident attorney for Hull also filed exceptions to the report ''because the said report allots to plaintiff O. A. Sears 35,000 acres of the land described in the judgment, when in fact the said plaintiff has not shown himself entitled to any of the land.'' Cauffiel also filed exceptions, upon the ground that Sears had not shown himself entitled to the tract of land allotted or any part thereof; and further, that the allotment was not made in conformity with the contract.

All the exceptions filed were overruled, and the report of the commissioners confirmed.

The judgment appealed from, and which was entered in November, 1910, recites that ''it is now ordered and adjudged that the plaintiff O. A. Sears under and by virtue of a deed of R. S. Fields bearing date of July 25, 1910, which deed is filed herein, only became vested in fee with the title to 35,000 acres of land in Perry County, being the 35,000 acres of land of what is known as the Degroot survey, and being the same 35,000 acres of land sold by the sheriff of Perry County on November 12, 1894, to pay and satisfy the taxes due the Commonwealth and Perry County by one Unthank, as trustee. * * * It is adjudged that plaintiff O. A. Sears only became vested with the title to said 35,000 acres of the 47,400 acres described in the petition, and that as to the remainder, to-wit: 12,400 acres, he took no title under said proceeding, and said deed of Fields, and that the beneficial title to said 12,400 acres is in the creditors of defendant F. A. Hull under said Hull's deed to Unthank

as trustee for his said creditors; and said Unthank having died since the execution of said deed, that title will vest in his successors in office when named; and the deed of R. F. Fields and wife is adjudged to have been effectual only to the extent of passing title to the 35,000 acres aforesaid.''

As we understand the issues presented by counsel in briefs, the appellant Sears complains of the judgment because there was not allotted and adjudged to him 47,-400 acres of land in place of 35,000 acres; while counsel for appellee asks that it be determined by this court that the tax sales were regular and that by virtue of these sales Sears and his vendors obtained a good title to the land.

As there is no appeal or cross-appeal by the appellee Cauffiel, we take it for granted that he is satisfied with the judgment; but, whether this be so or not, there is no appeal by him, and so it is not necessary or indeed proper that we should pass on any question except the one raised by the appellant—the only person who has appealed from and is complaining of the judgment of the lower court.

Appellant traces his title back to the deed made by the Auditor to Austin Fields. The deed made by Hull to Unthank is not in the record, but it appears from the certificate of the sheriff who sold the land for taxes that he sold ''35,000 acres of land assessed in the name of J. M. Unthank, trustee,'' and the deed of the Auditor to Fields recites that there is conveyed to him the ''land assessed in the name of J. M. Unthank, trustee.'' This deed mentions a number of parcels of land, describing some of them by metes and bounds, and others in a general way, and at the conclusion of the description recites that the above tracts ''contain 35,000 acres, more or less,'' referring for a more particular description to deeds referred to but that are not in the record. The deed further recites that it conveys ''the land listed in the name of Unthank, trustee.'' Except for an averment in the petition to the effect that there was in fact 47,400 acres of land in the tract sold by the sheriff, and in the boundary described in the deed made by the Auditor to Fields, there is no evidence of any kind or character in the record showing that the tract of land contained 47,400 acres. The averments in the petition that there was sold by the sheriff 47,400 acres, and also sold

by the Auditor's agent to Fields this number of acres, and that the Auditor's deed conveyed this number of acres, can not be taken as true against Hull, as he was a non-resident. If the title passed from Hull to Unthank, upon Unthank's death the property conveyed to Unthank as trustee passed—not to Unthank's administrator, but to his successor in office as trustee, and the successor of Unthank is not a party to the suit, and Unthank died before it was instituted. So that, the judgment of the lower court decreeing that only 35,000 was sold to satisfy the taxes and conveyed by the Auditor to Fields was proper. Without considering or deciding any question except the single one, whether or not Sears should have been adjudged entitled to 47,400 acres, we are of the opinion that the appellant has not shown himself in this record entitled to any relief not granted by the judgment of the lower court.

Wherefore, the judgment is affirmed.