## Young, et al. v. Davis, Executor, et al.

## Davis, Executor, et al. v. Grundy Presbyterian Orphans' Home and School, et al.

(Decided April 17, 1923.)

### Appeals from Washington Circuit Court.

1. Charities—Codicil Held to Entitle Second Trustee to Property After First Surrendered it.—Where a will created a trust for the establishment and maintenance of an orphans' home, and designated three organizations, who in turn were entitled to receive and administer the trust fund if the preceding organization refused to do so, without any provision for the disposition of the fund in case the first society accepted the trust and thereafter failed to maintain the home, a codicil making a devise of the fund in the event of the failure of each and all of the organizations to accept the property and establish the home and maintain it, manifested an intention that, if the first organization failed to maintain the home, the next should be entitled to the fund, if willing to maintain it, so that the second organization was entitled to receive the trust fund after the first organization had established the home but surrendered the property to the executor on thereafter determining not to maintain the home.

2. Executors and Administrators—Discharge of Executors Does Not Prevent Performance of Duties Subsequently Arising.—The fact that executors had made their final report and been discharged does not deprive them of their right thereafter to main-

tain an action to ascertain and protect the testamentary trust, after a trustee, which had accepted the trust for the establishment and maintenance of a home, surrendered it and refused to maintain the home.

3. Charities—Executors Cannot Impose Unreasonable Terms Upon Exercise of Trust.—A clause requiring a devisee accepting a trust to enter into terms with the executors, obliging the devisee to maintain an orphans' home upon terms satisfactory to the executors, did not empower the executors to impose unreasonable terms upon the trustee and thereby indirectly defeat the trust, so that the court properly refused to require the trustee to agree not to maintain any other similar home within the state as a condition to receiving the trust funds.

4. Executors and Administrators—Allowance of $750.00 to Attorneys of Executors Increased to $1,250.00.—Where a suit by executors to ascertain the disposition of the residue under the will, after the first trustee named therein had refused to execute the trust, involved intricate questions of law and the estate amounted to at least $60,000.00, and there was evidence fixing the fees of the attorneys for the executors at from $3,000.00 to $5,000.00, an allowance to them of only $750.00 was inadequate and will be increased to $1,250.00.

HARDIN H. HERR, and W. F. GRIGSBY for appellants, Young; et al.

HOBSON & HOBSON, POLIN & POLIN, JOHN J. DAVIS, NELSON D. RODES and W. C. McCHORD for appellees, Davis, Executor, et al.

HOBSON & HOBSON for appellants, Davis, Executor, et al.

JOHN DAVIS, NELSON D. RODES, W. C. McCHORD and HARDIN H. HERR for appellees, Grundy Presbyterian Orphans' Home, et al.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming on the first-named appeal and reversing in part on the second.

In May, 1904, Sallie H. Grundy, a resident of Washington county, died testate, being the owner in fee of a considerable estate and of a farm of about six hundred acres of land in that county. She was a widow and left no descendants.

In the first seven clauses of her will she made certain specific bequests which are in nowise involved in this controversy. By the eighth, ninth and tenth clauses of her will she created and provided for the maintenance of a trust

"For male and female orphan children left homeless in the world and without means of support, and to furnish a place and home where they can be raised, brought up in moral courses, educated and trained for useful trades, professions, pursuits and avocations in life,"

The eighth, ninth and tenth clauses of her will are as follows:

"EIGHTH: I will, bequeath and devise all the residue of my estate, real, personal and mixed, and of every nature and description, in trust to the Synod of Kentucky of the Presbyterian Church of the United States, the southern branch of said church, for an orphan home, said home to be for male and female orphan children left homeless in the world and without means of support and to furnish a place and home where they can be raised, brought up in moral courses, educated and trained for useful trades, professions, pursuits and avocations in life. Said property is to be taken possession of, used and managed and controlled by trustees appointed by and subject to and controlled by said synod and subject to removal or change at any time by said synod. Said children to be subject to the management and control of said trustees. This devise is to become effective only upon said synod and church through its established and constituted authorities by and properly acknowledged and authenticated and recorded in the clerk's office of the Washington county court accepting said property, and said trust and agreement to establish, open, maintain and keep up said home in perpetuity, using my present dwelling house and home therefor.

"NINTH: Should said synod of said branch of said church fail to accept said property and trust for purposes and upon terms and conditions as set out in the eighth clause of this will, then I devise, give and bequeath in trust in same manner for same purposes and upon same terms and conditions to the Synod of the Presbyterian Church of the United States of America, sometimes called the Northern Presbyterian Church, to be held and controlled and managed in like manner as set out in the eighth devise hereof. The devisee accepting said trust and devise for the purpose aforesaid is to have the privilege of adding to said property and fund and said orphan home at such times and as they may deem wise and for its improvement, but said home is to be and remain and kept in perpetuity at my said home and premises in said

county and state aforesaid. Said orphanage and home is to be known as the Grundy Presbyterian Orphans' Home.

"TENTH: In the event neither of said synods accept the devise of said property as herein made to them and each of them in the eighth and ninth devises of my will, I devise, bequeath and give it in trust in like manner upon the same terms and conditions and for purposes aforesaid to the Grand Lodge of Kentucky of the order of Free and Accepted Masons. Said property is not to be sold, conveyed or converted, but is to be held, kept up, used and devoted to the purposes aforesaid, namely, an orphans' home, in perpetuity. If said synod of the Presbyterian Church, southern branch, do not accept said trust and property within twelve months after my death, then said other synod of said other branch of said church may in sixty days after the expiration of said twelve months accept it, and in the event it fails so to accept it, then it goes to said Grand Lodge of Masons as aforesaid, and in that event it shall be the Grundy Masonic Orphans' Home."

The original will is dated the 14th of January, 1896, but on the 3rd day of October, 1901, she executed the following codicil thereto, to-wit:

"It is my will and I hereby direct my executors to take charge of the property named in the eighth, ninth and tenth clauses of my will at my death and to make all necessary arrangements with the devisees named in said clauses for the purposes of creating and establishing the orphans' home named and the maintenance and support of same in perpetuity as provided in my will or that one *which* shall accept said property in trust for the benefit of the charity intended as set out in my will and shall enter into terms with my executors binding and obligating said devisee to establish, carry out and maintain said charity and home in perpetuity upon terms satisfactory to my executors and accepting said property for the uses, purposes and charity and home aforesaid, then my executors are directed, authorized and empowered and granted full power to transfer and convey and assign said property to said devisee for the uses, purposes, charity and home aforesaid by deed with covenant of general warranty. This codicil is made for the purpose of assuring the establishment of said home, its success and perpetuity. It is further my will that the destitute orphan children of worthy parentage of Washington county and the counties adjacent thereto and after them of the state of

Kentucky be preferred as the beneficiaries of said orphans' home.''

Thereafter, on the 21st of October, 1902, she executed the following codicil to her will, to-wit:.

''Further, it is my will and I here now devise the property named and set out in the eighth, ninth and tenth clauses of this will in the event all the institutions and organizations named therein fail to take, accept, create and establish the orphans' home, the charity named in said clauses, and to maintain same, to my executors in trust to be held by them and applied and devoted to worthy Christian charities to be selected by my said executors in their discretion controlled and maintained by the Presbyterian church, property to be used and devoted to the benefit of and for the support of such charities. The devise is only to be effective in the event of the failure of each and all of said institutions and organizations named in said eighth, ninth and tenth clauses of my will to accept said property and establish said orphans' home and maintain same as intended and provided for in said, clauses.''

By a third codicil dated the 19th of March, 1904, she revoked a specific devise in the seventh clause of her will, which is not here involved.

On the same day she added yet another codicil wherein it is provided:

''In the event my executors, W. Y. Davis and John W. Lewis, deem it necessary to carry out either or any of the devises of my will to sell any or all of my real estate, I hereby authorize and empower them to sell said real estate at such time and upon such terms as they may deem best for my estate in their discretion and I hereby authorize and empower them and grant them full power of attorney as my executors to execute and deliver deeds of conveyance for said real estate to the purchaser or purchasers thereof conveying said real estate to them with covenant of general warranty.''

The testatrix died in May, 1904, some two months after the execution of the last codicil, and her will was thereafter, in June, 1904, probated in the county court of Washington county and placed on record.

The devise, therefore, of the legal title to the trust property for the specific purposes named, was to the synod of the Southern Presbyterian Church, with the provision that if such trustee or agency declined to accept the property and maintain the institution on the terms

named and undertake the administration of the trust for the benefit of the class of beneficiaries named, then, in that event, there is an alternative devise to the synod of the Northern Presbyterian Church for the same purposes, with a further proviso that if that trustee or agency also declines to accept the property and administer the trust on the terms named, then there is a devise to the Grand Lodge of Masons of Kentucky for the same purposes and upon the same terms.

But the synod of the Southern Presbyterian Church did accept the devise and the trusteeship upon the terms named in the will in October, 1904, and thereafter had established the orphanage provided for and maintained and operated the same under the terms of the will until the fall of 1920, when it decided, for reasons not necessary to give, to surrender the property to the executors of Mrs. Grundy and to further discontinue the operation of the same as such trustee. In her will the testatrix had designated W. Y. Davis and John W. Lewis as her executors, and in 1920, when the Southern Presbyterian Church decided it would no longer operate the orphanage or carry out the trust, one of those executors, John W. Lewis, was dead. The surviving executor was, however, notified of this purpose by the trustee and he, as such executor, thereafter brought this suit against the orphanage, which had been incorporated, the synods of the Presbyterian churches and their officials, the Grand Lodge of Masons and the heirs at law of the decedent, Mrs. Grundy. He asked that the parties be required to answer and assert their rights, and that the court define the rights and duties of the surviving executor and direct him in the discharge of his duties as such.

The Northern Presbyterian Church filed its answer, offering to qualify and continue the maintenance of the orphanage under the terms and conditions of the will, and asserting its right so to qualify as the second choice of the testatrix for trustee. It also asked the court to require the surviving executor to convey to it the trust property under the terms of the will and agreeing if that was done to continue to operate and maintain the orphanage under the terms of the will.

The heirs at law filed their answer, cross petition and counterclaim against all of the other parties and asserted that inasmuch as the Southern Presbyterian Church had in the first place accepted the devise and trust and had

operated and maintained the same for sixteen years that the two alternative trustees designated in the will no longer had any right in the property or authority under the will to qualify and operate the orphanage, and that as the trust had thus failed the property reverted to the estate of the testatrix and passed to her heirs at law.

The executor contends that the heirs at law are right in their contention that neither of the two alternative trustees referred to has now any right to qualify or administer the trust, but contends under the provisions of the codicil of October 21, 1902, that if all three of the designated trustees should fail to take, accept and establish the orphanage and maintain the same, it then became the duty of the executors under that codicil to devote the property to worthy Christian charities, to be selected by them, but controlled and maintained by the Presbyterian Church; and to this latter contention the heirs at law respond that the devise in that codicil to the executors is void for uncertainty, under our statute, and does not, therefore, stand in the way of the reversion claimed by them.

On submission the chancellor below sustained a demurrer to and dismissed the cross petition and counterclaim of the heirs at law, and on the petition and answer of the Northern Presbyterian Church adjudged that institution entitled to take the property in controversy and operate the same as an orphans' home under the provisions of Mrs. Grundy's will, and directed the surviving executor to convey the same to that church, and from that judgment the heirs at law and the executor each prosecute an appeal and on the executor's appeal he is joined by his attorneys as appellants because of an insufficient allowance, as alleged, to them by the lower court.

It is reasonably clear from the provisions of the original will that the testatrix did not at the time of its execution contemplate or have in mind that either of the three designated trustees or agencies, who might accept the devise, would ever undertake to establish and maintain the orphanage and thereafter discontinue it, and that when the Southern Presbyterian Church did after a period of sixteen years decline to further operate the same under the terms of the will, a situation arose which was not in any way provided for in the original instrument. But between the date of the original will and the execution of the codicil of the 21st of October, 1902, evi-

dently such possibility came into the mind of the testatrix, for she says: "Further, it is my will and I here now devise the property named and set out in the eighth, ninth and tenth clauses of this will in the event all the institutions and organizations named therein fail to take, accept, create and establish the orphans' home, the charity named in said clause, *and to maintain the same,*" then she devises the same to her executors for other purposes. It is reasonably clear from this last quotation in that codicil that the testatrix finally conceived the possibility of one of her designated trustees qualifying and undertaking to carry out the trust and failing "to maintain same," and "in the event *all*" of them either refused or failed to maintain the charity after undertaking to do so, then and in that event only was the devise to the executors for other purposes to become effective. The quoted language from that codicil was evidently intended to modify the provision in section 10 of the original will that

"If said Synod of the Presbyterian Church, Southern Branch, do not accept said trust and property within twelve months after my death, then said other synod of the other branch of said church may in sixty days after the expiration of said twelve months accept it, and in the event it fails so to accept it, then it goes to the said Grand Lodge of Masons as aforesaid."

It will be observed that in this quoted provision of the original instrument it was only the *acceptance* in the first place for which the testatrix provided, while in the above quoted provision to the codicil she is in addition providing for a state of case where a designated trustee might fail to *maintain* the institution after having once accepted it, and it is reasonably clear from this modification in the codicil she had in mind that each of the three designated trustees should, in the order named in her will, have the opportunity to accept the trust and operate the orphanage under the terms of her will if any prior trustee had accepted and failed to *maintain* the same.

It appears to us that a fair interpretation of the language of the codicil is that testatrix therein provided for the very contingency which has arisen, and that therefore the chancellor below properly permitted the Northern Presbyterian Church, the second choice of the testatrix, to qualify as trustee and operate the orphanage under the terms of the will.

This interpretation of the instrument obviates the necessity of discusing the application of the *cy pres* doctrine, and makes it unnecessary to determine whether the devise over to the executors in the event all of the designated trustees either failed to accept the trusteeship or maintain the institution is or not void under our statute.

But the heirs at law challenge the right of the executor to maintain this action upon the ground that in an action brought shortly after the death of Mrs. Grundy the accounts of the executors had been fully settled, the property had been turned over to the Presbyterian Church, the whole matter settled and the court by its judgment discharged the executors. But, manifestly, the contention is erroneous. Under the new conditions which arose when the Southern Presbyterian Church further declined to maintain or operate the orphanage, new duties were then imposed upon the executor. A situation had arisen which had not been foreseen either by the court, the executors or any of the parties. This valuable trust property which had been accepted by the Southern Presbyterian Church under the terms of the will was returned to the executors by that church, which declined to further retain it and maintain the orphanage. Under the will the legal title to the property was in the executor, and while its possession and control had been turned over to the Southern Presbyterian Church by the judgment of the court, the legal title to the property remained in the executor. The discharge by the court in 1904 only operated as a discharge up to that time and could not have relieved the executor from the duties imposed upon him under the will, for if all the designated trustees failed to accept, and failed to maintain the orphanage, then under one of the codicils the executors were authorized to sell any or all of the real estate.

But it is contended by the executor that inasmuch as the first codicil imposing upon the devisee accepting the trust the duty of entering "Into terms with my executors binding and obligating said devisee to establish, carry out and maintain said charity and home in perpetuity upon terms satisfactory to my executors," the executors had the right to impose upon the Northern Church in accepting the trust the condition that it should neither operate nor maintain any other similar institution in the state of Kentucky.

It could not have been within the mind of the testatrix to lodge unrestrained power in her executors to impose such unreasonable terms as might defeat the charity for which she provided. Her central thought, the dominant idea throughout her will, was to have this institution established and maintained for the benefit of the designated charitable class, and to say that she intended by that last above quoted expression to place it within the power of her executors to defeat her purposes by imposing upon the trustees unreasonable conditions which could not be accepted, would be giving it such an interpretation as she evidently did not have in mind. The chancellor properly declined to insert any such condition in the acceptance of the Northern Church.

The trust property is still virtually intact, the class of beneficiaries is still in existence, the plain purpose of the testatrix may be readily determined and we are aware of no reason why this orphanage should not continue to be operated and maintained by the trustee second in choice of the testatrix after the first choice has discontinued its operation and declines further to maintain it.

There was no reversionary clause whatever in the will, and it follows from what we have said that the lower court properly dismissed the cross petition and counterclaim of the heirs at law and properly permitted the Northern Church to undertake to operate and maintain the charity.

On the appeal of the executor and his attorneys because of the failure of the lower court to allow them sufficient fees in this action, little need be said.

On a motion for allowances the court allowed Hobson & Hobson as attorneys a fee of seven hundred and fifty dollars and the surviving executor for his services was awarded a fee of three hundred dollars, and it is earnestly insisted that these attorneys' fees are wholly inadequate in view of the amount in controversy, the labor involved in this litigation and the responsibility resting upon them. There were a number of affidavits introduced in the trial court fixing the fees of the attorneys for the executor at from three to five thousand dollars.

The evidence shows the landed estate in controversy is worth at least sixty thousand dollars, and the record presents a number of intricate questions of law very much out of the ordinary; and while the fees allowed are to be paid out of the trust fund devoted to the main-

tenance of a charitable purpose, and should, therefore, in all events, be reasonable, still we have reached the conclusion that the allowance to the attorneys in this case, considering the amount involved, the intricate questions presented and argued both in the lower court and presented by brief in this court, of seven hundred and fifty dollars to the executor's attorneys is too small, and that it should have been at least twelve hundred and fifty dollars.

The judgment is affirmed on the appeal of the heirs at law and for the single reason indicated is reversed upon the appeal of the executor and his attorneys.