## Bartlett v. Louisville Trust Company, et al.

### (Decided November 13, 1925.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Appeal and Error—One Entitled Only to Income Necessary for Her Support for Life Held Entitled to Appeal from Judgment Granting Allowances from Estate.—One entitled only to so much of income as is necessary for her support for life, but whose children, born and unborn, are remaindermen, has such interest in estate as warrants her to appeal from judgment granting allowances to executor and others, as she represents unborn children.

2. Appeal and Error—No Exception Necessary to Final Judgment.— No exception is necessary to review of final judgment.

3. Infants—Infant Need Not Show Diligence in Preparation of Defense to have Judgment Modified or Set Aside.—If injustice is done infant by judgment and injustice does not appear on face of record, infant may have judgment modified or set aside, under Civil Code of Practice, section 391, without averring or showing diligence in preparation of his defense to action, or any of special grounds for which new trials may be claimed.

4. Infants—Relief to which Infant Entitled Obtainable on Appeal, when Error Not Apparent on Record.—If error in judgment unjust to infant appears on face of record, remedy of infant is by

appeal, and relief on appeal is same as relief would be by action, under Civil Code of Practice, section 391, when error is not shown by record.

5. Infants—Infant Cannot Waive Rights by Mere Failure to Object on Trial.—Infant cannot waive his rights by mere failure to object on trial.

6. Evidence—Court Not Bound by Opinions of Attorneys as to Reasonableness of Allowances.—In determining whether allowances to executor, an advisory committee named in will, and attorneys are reasonable, court is not bound by opinions of attorneys, but must exercise its own judgment for protection of estate.

7. Executors and Administrators—Guardian and Ward—Allowance to Executor and Committee of 5 Per Cent. for Two Years Excessive.—Allowance of about 5 per cent. to executor and committee aiding in administering for two years estate of $2,379,154.09 held unreasonable, and reduced to 1 per cent. to executor and 1 per cent. to committee, in addition to allowance of 5 per cent. on expenditures; such reduction, however, affecting only that part of the estate in which beneficiary appealing was interested.

8. Appeal and Error—Statement Cannot be Amended After Time for Taking Appeal has Expired.—Statement of appeal cannot be amended after time for taking appeal has expired, so as to bring in new parties not made parties within time allowed for taking appeal.

9. Appeal and Error—Attorneys Necessary Parties to Appeal from Allowance of Counsel Fees for Services in Administration of Estate.—Where beneficiary under trust created by will appeals from allowances made to the executor, a committee acting in conjunction with the executor, and to attorneys for the executor and the committee, for services rendered in the administration of the estate, such attorneys are necessary parties to the appeal, and, where not joined as appellees, allowance made to them cannot be reviewed.

ELWOOD HAMILTON, BECKHAM, HAMILTON & BECKHAM and O'REAR, FOWLER & WALLACE for appellant.

JAMES GARNETT, D. L. HAZELRIGG, HELM BRUCE, LAWRENCE LEOPOLD, FRED FORCHT, and BEN F. WASHER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Charles P. Moorman died a resident of Louisville, Kentucky, on February 13, 1917, leaving personal estate amounting to $2,379,154.09. By his will, which was duly admitted to probate, he appointed the Louisville Trust

Company as his executor and appointed Arthur Board, Dr. Leon L. Solomon and Caldwell Norton a committee to act at all times and in all matters with his executor in the control and management of his estate, After making certain specific devises, he directed his executor, with the approval of the committee, to divide all the residue of the estate into two parts. One part he devised to the Louisville Trust Company in trust for his son, Charles P. Moorman, Jr., for his natural life, with direction that so much of the income therefrom as might be necessary should be used by the trustee under the direction of the committee for the proper and comfortable support of his son, Charles, and after his death the principal and unused income to go to a corporation then to be organized, known as the Charles P. Moorman Home for Women. The other half of the estate he devised to the Louisville Trust Company in trust for his granddaughter, Lucy Elizabeth Moorman, for her natural life, directing that so much of the income therefrom as might be necessary should be used by the trustee under the direction of the committee for the proper and liberal support of the granddaughter and her family, should she have one; the income from this portion not devoted to the support of the granddaughter to be held until such accumulations reached the amount of $200,000, and when she arrived at 25 years of age the $200,000 should be paid to her. Should the granddaughter die at any time leaving issue surviving her, the trust is to continue until the youngest of such issue living at her death attains the age of 21 years, and so much of the income as the committee may deem necessary is to be used by the trustee for the support and education of such issue until the time designated, when the trust shall cease and the whole trust fund shall be distributed to the issue. Should the granddaughter die leaving no issue surviving her, or should such issue die without issue surviving before attaining the age of 21 years, then this half of the estate shall go, as directed in regard to the other half, to establish a home for women.

The executor, on February 26, 1917, filed this action against the devisees and the committee, setting up the provisions of the will and praying, among other things, that the creditors of the estate be compelled to appear and assert their claims; that the cause be referred to the

commissioner of the court to ascertain and report the nature and extent of the estate of its decedent and *"of the claims against that estate, including the costs of administering the said estate and reasonable counsel fees;"* that the court advise the plaintiff as executor and trustee under the will as to its duties, and as to the duties of the committee, and direct it in the settlement of the estate. Orders were made from time to time as prayed in the petition. On January 25, 1919, this order was entered:

"On motion of plaintiff, this action is referred to the commissioner of this court for the purpose of ascertaining and making a report on the following: First. The assets constituting the estate of C. P. Moorman, deceased, and coming into the hands of the plaintiff, executor. Second. The debts and liabilities of the estate of said C. P. Moorman, deceased. Third. The allowance proper to be made to the executor and the committee designated by the will of C. P. Moorman, deceased, and attorneys representing said executor and committee in the administration of the said estate. Fourth. In order to ascertain creditors and make report on the debts and liabilities, the commissioner will advertise in some newspaper or newspapers, published in the city of Louisville, and will sit and receive claims against said estate until February 6, 1919. Fifth. The parties and trusts to whom the balance of the estate, after the payment of debts and allowances, is properly distributable."

The commissioner filed his report on February 21, 1919. In this report, among other things, he stated:

"Ben F. Washer, Helm Bruce, Fred Forcht, Jr., and Lawrence S. Leopold, the attorneys who have throughout the progress of this litigation represented the committee, executor and trustee, *are asking* for a fee of $100,000.00, and there is no objection made to the same. Sustaining this fee, *they have filed* their joint affidavit setting out the character of services rendered by them. Supporting affidavits as to the reasonableness of the charge have also been made by Shackelford Miller, A. J. Carroll, J. C. Dodd, A. E. Richards and Merit O'Neal, practicing attorneys at this bar."

The closing paragraph of the joint affidavit of the executor's counsel reads:

"Affiants submit that for services rendered by them to the executor and the committee, as outlined in part above, *they are entitled to receive from the estate of C. P. Moorman* an allowance of $100,000."

The commissioner fixed the allowance proper to be made to the executor for two years' service at 2½ per cent of the gross amount of the estate, also 5 per cent on $174;594.69 expended as executor, $33,509 expended as trustee for Charles P. Moorman, and $33,509 expended as trustee for Lucy Elizabeth Moorman, amounting in all to $71,445.63. He fixed the allowance proper to be made to the committee for two years' service at 2½ per cent of the gross amount of the estate, or $59,365. He fixed the allowance proper to be made to the attorneys, representing the executor and committee in the administration of the estate, at $100,000. This was in addition to $8,040 which had already been paid to certain attorneys. No exceptions were filed to the commissioner's report, and an order accompanied by a written opinion was entered confirming it. In the written opinion, the court refers to the allowance made to the attorneys of the executor and committee as "the fee *allowed counsel.*" Lucy Elizabeth Moorman, now Bartlett, who was then an infant, upon becoming of age prosecutes the appeal before us from this judgment.

It is insisted that Lucy Elizabeth Moorman is, under the will, entitled to only so much of the income as is necessary for her support for life, and that she has not such an interest in the estate as warrants her to appeal from the judgment. But if she cannot appeal, no one can appeal. She represents her children, then unborn, and they are bound by the judgment against their representative. She now has two children. She is a necessary party defendant to the action, and she has a right to be heard on every order disposing of any part of the estate in so far as such order may affect the interests of that part of the estate she represents. Otherwise she would be without remedy, although the estate was so wasted that the provision for her would be entirely defeated.

It is also insisted that no exceptions were filed to the commissioner's report, and that no exception was taken to the judgment. But neither of these objections

can prevail. No exception is necessary to a final judgment. This was held more than 60 years ago in Coffman v. Wilson, 2 Metc. 542, and has steadily been maintained since as the rule of the court. Loving v. Warren County, 14 Bush 316; Craycroft v. Duncan, 6 Ky. Law Rep. 651; Meacham v. L. & N. R. R., 45 S. W. 363, 20 Ky. Law Rep. 112; Miller on Appellate Practice, sec. 43. If injustice is done an infant, and the injustice does not appear on the face of the record, the infant may have the judgment modified or set aside, under section 391 of the Civil Code, without averring or showing diligence in the preparation of his defense to the action, or any of the special grounds for which new trials may be claimed. It is enough that he was an infant at the time of the rendition of the judgment, and that it is unjust according to the facts presented by him. Newland v. Gentry, 18 B. Mon. 531; Allen v. Troutman, 10 Bush 61.

If the error appears on the face of the record, the remedy of the infant is by appeal, and if, on the face of the record the judgment is unjust according to the facts presented by the record, the relief of the infant on appeal is the same as his relief by action, when the error is not shown by the record. The well-settled rule as to infants is thus stated in Spradlin v. Stanley, 124 Ky. 701, 99 S. W. 965, 30 Ky. Law Rep. 928:

> "They cannot waive any of their rights by mere failure to object. An erroneous judgment against an infant, where his condition appears in the record, must be reversed on appeal. Where the error does not appear in the proceedings or the condition of the defendant in the record, the error may be corrected by the court rendering the judgment."

Here the condition of the infant, who was unmarried at the time of the entry of the judgment, appears in the record, and the only question presented is whether the judgment fixing the allowances is warranted by the record. The facts are these:

The amount of the estate exceeded the capital stock of the trust company. The county court required it to give surety upon its bond in the sum of $1,000,000; the bond was given with the National Surety Company as surety, for which it paid a premium of $1,475. The executor immediately took charge of the estate. The personal estate inventoried $2,379,154.09. The trust company collected as

income therefrom, up to February 1, 1919, a sum in excess of $248,000 and it disbursed the sum of $267,388.91, exclusive of amounts paid to the beneficiaries under the will. After numerous conferences between the executor and the mother of Lucy Elizabeth Moorman, it was finally agreed that the trust company would pay for her support $800 a month. In addition to this there were bills paid for her aggregating $4,000, and $1,500 was paid for an automobile. After all this was done, rumors came to the trust company of a contest of the will in the name of Lucy Elizabeth Moorman by those representing her. When the trust company became satisfied that the contest was probable, it immediately took steps to prepare therefor. The president of the trust company was a personal friend of Mr. Moorman, frequently visited him, and had drawn his will. The testator was 83 years old when the will was made. A year before he had had a stroke of paralysis, and after this he spoke with more or less indistinctness. The executor immediately employed attorneys to resist the contemplated contest of the will. A great many conferences were held, and at the advice of the attorneys a large number of statements were prepared and signed by different persons who knew the testator as to the condition of his mind. Possibly 100 of these statements were secured by the attorneys in view of being ready for a contest. The will provided that, if any beneficiary of the will contested it, he should lose all rights under the will. The guardian of the infant declined to institute the contest, fearing that it might be responsible to the infant if the contest was unsuccessful. So finally the contest was instituted in the name of Lucy Elizabeth Moorman, by Nicholas H. Dosker, as her next friend.

The executor insisted that the next friend, under such circumstances, was without authority to conduct a contest of the will which might be so injurious to the infant. The county court, the circuit court, and this court upheld this contention, and the contest of the will was dismissed; but this court held that Lucy Elizabeth Moorman could herself, if she so desired, take steps to contest the will on becoming of age. Moorman v. Louisville Trust Co., 181 Ky. 30, 203 S. W. 856. She was then 19 years of age. The executor deemed it important to have the question settled, and, after numerous conferences with her guardian and relatives, a settlement was agreed

upon between the executor and the committee and those representing the infant, by the terms of which the executor agreed to pay her the sum of $225,000 when she became of age, in lieu of the devise of $200,000 to her when she was 25 years old, and this settlement of the will contest was approved by the chancery court. During this time numerous questions arose as to federal estate taxes, federal income taxes, state inheritance taxes, state *ad valorem* taxes, and city taxes, all of which had to be settled, and involved questions of law and of fact, all of which were gone into by the executor with great care.

A few days after the qualification of the executor a suit was filed by a revenue agent, seeking to have a large assessment made against the estate, but this was resisted, with the result that the claim made by the agent for something like $20,000 was settled by the executor for $1,764.88. In order to pay necessary expenditures, the executor made sales of securities amounting to $179,-777.99. The committee acted with the executor and advised it as to the management of the estate and the steps taken. The four lawyers who were employed by the executor also met with them from time to time and advised as to the steps to be taken. The executor and the committee divided the personal estate into two parts and assigned one half to the trust company as trustee for the son, and the other half to the trust company as trustee for the granddaughter. The attorneys instituted and maintained the action for a settlement; they superintended the preparation of the accounts of the executor; they attended the hearings before the commissioner, resisted the proceeding instituted by Dosker, as next friend, to contest the will, and advised the executor in the settlement that was afterwards made of the will contest. The affidavits of the president of the trust company and the committee were filed, showing that the allowance to the executor and the committee was reasonable, in view of the services rendered. The affidavit of a number of attorneys was filed, showing that the allowance to the attorneys was reasonable. No contrary proof was offered.

So the question is simply presented whether the allowances shall stand on the facts shown by the record. These allowances for the first two years of the administration of this estate total over 10 per cent of the estate. In determining whether allowances are reasonable, the court is not bound by the opinions of attorneys as to the

reasonableness of the allowance, but must exercise its own judgment for the protection of the estate. It is a reproach to the law, if excessive allowances are made and estates are wasted in administration. It is essential that the law should be respected, and that men should have confidence, when they make wills devising their estates in trusts for certain purposes, that these trusts will be fairly carried out, and that the estate will not be eaten up with allowances greater than would reasonably be paid by individuals for the same service. The court cannot escape the conclusion here that the allowance to the executor, which was something over $35,000 a year, for its services, and the allowance to the committee, which amounts to practically $10,000 a year each, for their services, is more than was reasonable or proper. All the services rendered by the committee were in aid of the executor in discharging its services as such, and the fact that both the executor and the committee were to act in doing these things must be taken into consideration in fixing the allowance of each. The allowance made by the court to the two is 5 per cent upon the gross amount of the estate, although in fact the estate consisted of stocks and bonds, and these stocks and bonds have simply been divided into two parts and allotted in trust as above stated.

In view of all the facts, the court has reached the conclusion that an allowance of 1 per cent to the executor on the gross amount of the estate, in addition to the allowance of 5 per cent on all its expenditures as fixed by the circuit court, will be a reasonable allowance to it, and that an allowance to the committee of 1 per cent on the gross amount of the estate will be a reasonable allowance to them for the two years' service indicated, for none of them gave his whole time to the management of this estate. Sometimes they met several times a week for conferences, but for much of the time their conferences were not so frequent. This will pay each of them nearly $4,000.00 a year, and it is in the court's judgment as much as should be reasonably allowed. The allowances above indicated are for the first two years, when special difficulties beset the administration of the estate, and are not to be considered as indicative of future allowances out of the two trust funds. However, as the estate has been divided into the two trust funds created by the testator, only one of which has been and can be allocated to the

appellant and those she represents, and as the bene-
ficiaries of the other trust fund, all of whom were *sui juris*
and parties to this action, have prosecuted no appeal
from the judgment of the lower court and are making no
complaint of it, it is obvious that these allowances can
be reduced only to the extent that appellant's one-half
of the estate will be benefited thereby. As her trust fund
has been established and set apart, she can have no possi-
ble interest in any recovery or reversal that serves only
to enrich the other half of the estate in which she and
those she represents have no rights. The beneficiaries of
this other half are satisfied with these allowances. There-
fore the reduction should be no greater than is rightfully
complained of and this is, under this record, one-half of
the difference between the allowances as made by the
lower court and as indicated as proper in this opinion,
such reduction to go for the benefit of the trust fund set
apart for appellant and those she represents and in no
wise to benefit the other trust fund which is satisfied with
the allowances made by the trial court. Cf. Frazer v.
Fidelity & Deposit Co., 89 S. W. 134; Sears v. Hull, 147
Ky. 745, 145 S. W. 760; 4 Corpus Juris 697.

The attorneys were not named as appellees in the
statement of appeal originally filed. After the time for
taking the appeal had expired, an amended statement was
filed, joining them as appellees. They entered a motion
to strike out the amended statement, and filed an answer
pleading limitation. The plea of limitation to the
amended statement must be sustained. The rule is that
a statement of appeal cannot be amended after the time
for taking the appeal has expired, so as to bring in new
parties not made parties to the appeal within the time
allowed by law for taking an appeal. Smith v. Craft, 58
S. W. 500, 22 Ky. Law Rep. 643; Combs v. Combs, 144
Ky. 389, 138 S. W. 629; Caudill Coal Co. v. Solner Mining
Co., 198 Ky. 243, 248 S. W. 533. Buchanan v. Boyd, 131
Ky. 433, 115 S. W. 222, 120 S. W. 295, involved only the
question of reviving an appeal against the representa-
tives of an appellee named in the statement.

It remains, therefore, to determine whether or not
the attorneys were necessary parties to the appeal, for if
they were, this case cannot be reversed as to the allow-
ances made them. In the prayer of its petition, the execu-
tor asked that the commissioner be required to ascertain
"the claims against the estate, including the costs of ad-

ministering the said estate and reasonable counsel fees.'' The order under which the case was referred to the commissioner recited that it was so referred to ascertain, among other things ''the allowance proper to be made to the executor and the committee designated by the will of C. P. Moorman, deceased, *and* attorneys representing said executor and committee in the administration of the said estate.'' The attorneys, pursuant to said order of reference, appeared before the commissioner and filed their joint affidavit setting forth the nature of their services and closing with these words: ''Affiants submit that for (these) services . . . they are entitled to receive from the estate . . . an allowance of $100,000.00.'' The commissioner in his report stated that these attorneys ''are asking'' for a fee of $100,000.00, which he allowed. In its opinion confirming the commissioner's report, the lower court refers to this allowance as ''the fee *allowed counsel.''* In the light of this record and the prior decisions of this court, it is idle to say that the attorneys were not necessary parties to this appeal. The allowance was made to them and clearly on their motion. The order of confirmation, then, was a judgment in their favor for this fee. In Thomas v. Thomas, 162 Ky. 630, 172 S. W. 1054, which was a suit to settle a decedent's estate, an allowance was made the administrator's attorney on the latter's motion. Later this allowance was reduced. The administrator appealed from the order reducing the allowance. In discussing the administrator's appeal on this branch of the case, we said:

''It does not appear that the appellant, James I. Thomas, administrator of the estate of Nancy Watkins, has any interest in this appeal whatever; that the attorney for whose benefit the order of allowance was made, and upon whose motion it was made, is the party in interest, whose duty it was to appeal to this court if he felt aggrieved by the order from which the appeal was taken.''

In Angel v. Wood, 153 Ky. 195, 154 S. W. 1103, we denied an appeal from an order allowing attorneys' fees in a settlement suit where the attorneys had not been made parties to the appeal, saying:

''Complaint is made of the fact that certain attorneys' fees were improperly allowed in the action.

The propriety of the court's action in this respect cannot be reviewed, for the attorneys are not parties to this appeal.''

To like effect is Robertson v. Talbott, 22 Ky. L. R. 151, 56 S. W. 717. In the case of Reed v. Reed, 23 Ky. L. R. 2186, 66 S. W. 819, it was sought to review the action of the trial court in fixing the allowance to the commissioner in a settlement suit. We refused to review such allowance, because the commissioner was not made a party to the appeal.

In Young v. Davis, Exor., 200 Ky. 76, 252 S. W. 100, the attorneys of the executor appealed because of the failure of the lower court to allow them sufficient fees. We sustained such appeal and increased the fees allowed.

No case has been called to our attention nor have we found one which runs counter to the rule laid down in these cases above cited. Since they decided that where the allowance is made to the attorney of the executor such attorney is a necessary party to any appeal to review such allowance, and since this record discloses that the allowance here in question was made to the attorneys, it follows that they were necessary parties to this appeal and the appellant's failure to make them such precludes our right to review such allowance.

However, for the error as to the allowances of the executor and committee hereinbefore set out, the judgment of the lower court is reversed and cause remanded for a judgment as above indicated.

Whole court sitting.