## Sallee v. Sallee.

(Decided February 19, 1926.)

### Appeal from Ballard Circuit Court.

1. Appeal and Error—Chancellor's Findings Not Disturbed, Where Testimony Creates Only a Doubt as to Accuracy of Findings.— The Court of Appeals has the right in an equity case to review questions of fact, but will not disturb the chancellor's findings, if testimony creates only a doubt as to their accuracy.

2. Divorce—Court of Appeals has no jurisdiction to interfere with a judgment of divorce.

3. Divorce—Court of Appeals may examine facts to determine whether judgment as to alimony is proper.

4. Divorce—Evidence as to husband's physical violence and surly conduct held insufficient to establish cruel and inhuman treatment.

5.  Divorce—Evidence held not to show that husband failed to pro-
    vide suitable provisions or home, constituting cruel and inhuman
    treatment.

6.  Divorce—Accusations in Pleading of Spouse as to Improper Con-
    duct of Other Spouse Not Cruel and Inhuman Treatment, Unless
    False and Malicious.—For accusations made by husband in plead-
    ing as to lewd and lascivious conduct on part of wife to constitute
    cruel and inhuman treatment, it should be demonstrated that they
    were groundless, and were intentionally, falsely, and maliciously
    made.

7.  Divorce—Accusations in Husband's Pleading as to Improper Con-
    duct of Wife Held Not, Under the Evidence, Cruel and Inhuman
    Treatment.—Charge of lewd and lascivious conduct on part of
    wife made in husband's answer held not cruel and inhuman treat-
    ment, where, under the evidence, facts within husband's knowl-
    edge were sufficient to authorize him to make such charge.

8.  Divorce—Alleged Excessiveness of Allowance Eo Nomine to Plain-
    tiff's Attorneys Not Considered on Appeal, where Attorneys Not
    Made Parties to Appeal.—Where allowance to plaintiff's attorneys
    in divorce suit was made direct to them eo nomine, and was taxed
    against defendant as costs, but plaintiff's attorneys were not made
    parties to appeal, court cannot consider alleged excessiveness of
    such allowance.

JOHN E. KANE, W. T. WHITE and M. C. ANDERSON for appel-
lant.

HENRY F. TURNER and ROY M. SHELBOURNE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Revers-
ing as to the allowance of alimony.

The parties to this divorce litigation were secretly
married on November 4, 1922. The husband, who is the
appellant and was the defendant below, was 49 years of
age at the time, and had never been married. The wife,
who is the appellee and was plaintiff below, was 38 years
of age, and had three children by a former marriage,
whose ages were 14, 15 and 17 respectively. She and her
children were living at the time with her brother in Bard-
well, Kentucky, who was jailor of Carlisle county, and
resided in a portion of the county building, a part of
which was used as the jail for the county. She continued
to so reside with her children after the marriage, which
was kept a secret until January 28, 1923, when the parties
made the fact of their wedding known and lived for a
short while with defendant's widowed mother at Bland-
ville, in Ballard county, which was the old Sallee home-
stead and was a comfortable home. After the expiration
of a few weeks they moved into a house in another part of

that county located on a farm owned by defendant, which was described by the witnesses as being a boxed house, weatherboarded and having three or four rooms, at least one of which was, unfinished to the extent that it was not ceiled overhead. They occupied that house on defendant's farm from that time until about the middle of May, 1923, when they returned to the residence of defendant's mother, where they had first lived, and they remained there occcupying the house with the elder Mrs. Sallee until some time in the latter part of August the same year when plaintiff left and returned to the house on defendant's farm, her children following her a few days later.

On September 5 thereafter she filed this equity action in the Ballard circuit court seeking a divorce and a judgment for alimony against defendant in the sum of $50,000.00, alleging in her petition that he was worth at least $100,000.00, and she relied upon the statutory ground of cruel and inhuman treatment, settled aversion, &c. The answer denied those grounds and also the alleged amount of defendant's property, averring that he was worth not exceeding between $4,000.00 and $5,000.00. Later an amended answer was filed in which defendant set up a marriage contract between the parties and averred that plaintiff before and after the marriage was guilty of lewd and lascivious conduct; that it was concealed by her from him and but for which he would never have entered into the marriage relation with her, and because thereof he was entitled to have the marriage declared null and void, and that her same conduct after marriage entitled him to a severance of the bonds of matrimony. That pleading was denied and proof was taken covering about 600 typewritten pages of the record.

During the pendency of the cause defendant's mother filed her intervening petition and asked to be made a party defendant, and in which she claimed ownership in something more than $9,000.00 of notes that plaintiff had attached upon the filing of her action, and which amount she averred was her distributable share as widow of her deceased husband's estate. That pleading was made a cross-petition against plaintiff, and she replied thereto denying its averments.

Upon final submission the court granted the prayer of the petition and entered a judgment divorcing the parties and adjudged plaintiff entitled to recover perma-

nent alimony in the sum of $3,000.00, for which judgment was rendered in her favor. The court also entered an order requiring defendant to pay plaintiff $20.00 per month for the maintenance of a five months old infant girl child that was born of the marriage after the filing of the petition, and gave her custody of that child. The court further adjudged that the intervening defendant, the elder Mrs. Sallee, was entitled to the relief sought by her pleading, and adjudged her to be the owner of the notes claimed therein. Both parties objected to the judgment, the defendant praying an appeal to this court and plaintiff praying a "cross-appeal," but only defendant has appealed, on the ground that the court erred, first, in rendering any judgment in favor of plaintiff and excessive allowance to her attorneys, but if mistaken in that, then second, the court erred in the amount of alimony allowed, but because of the conclusions we have reached the second ground will not be noticed. No cross-appeal by plaintiff was prayed or obtained in this court, and in view of that fact, and the further one that she only asked in the lower court for a *cross-appeal,* we seriously doubt if her objections to the judgment are properly before us; but if otherwise the conclusions we have reached, as set out below, render it unnecessary to further notice her complaints.

It readily will be seen that the only questions involved are ones of fact and which this court in an equity case has the right to review, but the findings of the chancellor will not be disturbed if the testimony on the whole creates only a doubt in our minds as to their accuracy. If, however, it goes beyond that, then it is not only our right but our duty to decide the case in accordance with what we find the facts to be from the clear preponderance of the evidence.

It will render this opinion far beyond due limits, and at the same time serving no useful purpose, to enter into a detailed analysis of the testimony as given by the 30 or 40 witnesses who testified in the case. The testimony of plaintiff was directed toward proving three facts establishing her ground of cruel and inhuman treatment, which were, (1) physical violence and surly conduct; (2) failure to provide suitable provisions or a suitable home, and (3) the groundless charge of lewd and lascivious conduct made in defendant's amended answer. Manifestly, unless one of those grounds was sufficiently proven the

plaintiff failed to sustain the averments of her petition, and the divorce should not have been granted. Under a continuous and consistent line of decisions by this court, following the statute on the subject, we have no jurisdiction to interfere with the judgment of divorce; but the same opinions, which are too numerous to incorporate herein, say that we do have jurisdiction to inquire into the facts to ascertain whether the judgment as to alimony was or was not proper, and under that practice we will now briefly notice the testimony for the purpose of determining the only question involved on this appeal.

The principal occasion by which fact (1) is sought to be established was a little episode that occurred one day when the parties were going from Wickliffe, Kentucky, to their home at Blandville. Plaintiff testified that they got into a quarrel and defendant called her a "damn fool" and struck her on the knee while they were riding together in the automobile, and that he afterwards hit her somewhere about the head and knocked off her hat. Defendant denied those facts as pictured by plaintiff, but said that he stooped down while driving the automobile to arrange some part of the steering machinery and in doing so his hand or some part of his arm came in contact with plaintiff's knee and that he explained to her that he meant nothing thereby, but she did not accept it and slapped him in the face and started to administer a second one when he threw up his hand to ward it off and knocked off her hat. He got out and recovered it and they went on home, and, according to the proof, everything was lovely during the remainder of the trip. He admitted that on that occasion and perhaps one or two others he used the expression that she was acting like a "damn fool," but he explained, and the proof otherwise overwhelmingly establishes it, that on such occasions she was falsely accusing him of consorting with other women and being disloyal to his marriage vows. Such accusations clearly appear to be without any foundation whatever, and defendant would explain to her that she was entirely mistaken and her suspicions were wholly groundless. Not a witness was introduced out of the great number who testified to prove that defendant was guilty of any such conduct, and upon nearly every occasion when he would go away from home he would do so in his automobile and his wife would be with him. In view of what we will hereafter state we are clearly convinced that this fact was not sufficiently proven.

We have arrived at the same conclusion with reference to fact (2). Plaintiff and her witnesses testified that on one or perhaps a few other occasions while they were living on his farm he would himself slice the bread and apportion the amount to each member of the family, and would make it less than was absolutely needed. It does not appear that plaintiff did any of the cooking, although perhaps some of her children, who were girls, did, and defendant washed the dishes and did all of the laundry for the family. He said that on one occasion he thought the family was through eating and he picked up the loaf of bread, which seems to have been the only kind the family used, and started to put it away when he was informed by some one that they were not through eating, when they laughed over the incident and, of course, he returned the bread. Neighbors at both places of residence, and those living in the same house with them while they were living at Blandville, testified to the abundant supply of provisions furnished by defendant, not only consisting of substantial and necessary food but also of candies, fruit and other confectioneries, although the most of the candy was made at home with sugar furnished by defendant, which is itself a circumstance relied on to establish his alleged penuriousness. Witnesses who would be unexpectedly in the house at meal time and who were wholly disinterested in this litigation, gave testimony as to the furnishing of the table by defendant, and grocers, beef peddlers and others gave similar testimony, all of which refuted the charge of his failures in these respects.

But, in support of this fact, it is urged that the house on his farm to which he moved plaintiff and her children was entirely unsuitable and inadequate. True it is, that they testified that one of the rooms was unfinished, and that in some parts of it or maybe some other room there was a small crack which was temporarily repaired and that on occasions the roof leaked in one or two places, but a greater number of witnesses contradicted that testimony and the record is barren of any complaints made by plaintiff in regard thereto at any time during the occupancy of that house. It was not the most elaborately furnished one, but reasonably comfortably so, and, possibly, as much so as defendant's proven means would justify. At any rate, the testimony as a whole convinces us that this fact is largely exaggerated and defendant's failure with respect thereto,

if any, did not rise to the dignity of cruel and inhuman treatment within the meaning of the statutory grounds for divorce and to which we will also hereafter briefly again refer. Besides, all that was condoned by the move back to Blandville.

Fact (3) has often been held by us as sufficient proof of the statutory grounds under consideration. Smith v. Smith, 181 Ky. 55, and other cases and authorities therein cited. But in order for such accusations, made in a pleading, to have that effect it should be demonstrated that they are groundless and were intentionally, falsely and maliciously made. It has never been held by this or any other court, so far as we are aware, that a husband might not in good faith and upon reasonable information prefer such a charge without subjecting himself to the penalties of the statute and thereby giving his wife grounds for divorce when she otherwise had none. To so hold would subject every husband to the charge contained in the statute if he should fail to prove to the satisfaction of the court the truth of the accusation. In the cases *supra,* and others relied on by plaintiff's counsel, it was perfectly manifest from the proof in them that the accusation made by the husband was utterly groundless, and many times maliciously made. Taking the Smith case as an illustration: The husband there was the plaintiff and the alleged lewd and lascivious conduct of his wife was his only ground for the divorce he sought. He hired his nephew and agreed to pay him $250.00 to himself have intercourse with the wife and to afterwards testify to it, the first and last of which (accepting the offer and testifying) he did. In addition, the occasion to which the nephew testified, as well as the manner of the accomplishment of the act, was overwhelmingly disproven by witnesses for the wife. There were many other facts and circumstances in the case showing that the husband was proceeding for the divorce only for the purpose of clearing the way for him to marry another woman with whom he had become enamored, and with whom he was living in a state of concubinage, and that he had resorted to the above method of obtaining testimony against his wife for the purpose of setting him free so that he might be at liberty to marry that woman.

This case is entirely different. Some two or three witnesses testified to admissions by plaintiff of such conduct and her solicitation for them to go with her on

automobile rides with selected men to engage in same conduct, but which they declined. Plaintiff before her marriage became acquainted with a Mrs. Murdock who lived at Chester, Illinois, whom she on occasions visited. The latter testified that on the last one, which was something more than a year before the marraige, plaintiff admitted unlawful conduct between her and a man by the name of Anderson who visited her at that house. Another witness who was boarding in the Murdock home testified that during that visit he saw plaintiff and Anderson so engaged. However his testimony is somewhat discredited, since he claimed to have seen them through a transom over a certain door, when it is shown that there is no transom at that place. Mrs. Murdock after that visit was terminated came to Bardwell, where plaintiff was then living, and which she says was done at the request of plaintiff and for the purpose of assisting the latter to rid herself of her pregnant condition, and that it was then agreed that plaintiff should return to the home of the witness and consult with Anderson, which was done, and he furnished some kind of prescription which brought about the result. Plaintiff gave notice to take the deposition of Anderson, but failed to do so, although those of other witnesses were taken at the location of his home, and at the time defendant's counsel announced their willingness for Anderson's deposition to be taken.

Two other witnesses testified to very suspicious conduct between plaintiff and a man in Bardwell, but they were then in jail upon some criminal accusations and it is said that their testimony is not to be believed. However, plaintiff after her marriage, but before it became known, went to that same man and procured him to drive her in the night time from Bardwell to Blandville, a distance of about 7 or 8 miles, and upon which they started about 8:30 or 9 o'clock and did not return until 12 o'clock thereafter. Her excuse for making that trip was that her husband whom she had married on November 4 prior thereto was reported to be consorting with women at Blandville where he was then staying and she wanted to go there for the purpose of ascertaining the truth, although she was then living with her brother at Bardwell but never mentioned the fact to him. No witnesses testified in support of her suspicion, which seemed to have been groundless; but the fact of her going in a buggy at that hour of the night, and being out that late

with a man who was not a member of the family or a relative of hers, is, to say the least of it, a suspicious circumstance. Upon the whole we conclude that the facts within the knowledge of defendant as to prior conduct of his wife were sufficient to authorize him to rely thereon in his pleading without subjecting him to the penalty of cruel and inhuman treatment within the statute and within our prior opinions upon the subject.

The marital relation is a sacred one and is the chief cornerstone of civilized society. It should not be wrecked or destroyed upon trivial causes or scant testimony, and before courts should assume the responsibility of dissolving the bonds the proof of the grounds relied on should be reasonably clear and convincing. Human nature should be taken into consideration and due allowance made for its weaknesses. Occasional and slight exhibitions of temper should not be magnified into cruel and inhuman treatment upon which to base a judgment of divorce, especially if there were reasonable provocations therefor. We have read this record carefully and we are at a loss to find upon what grounds plaintiff based her suspicions as to her husband's wrongful associations with other women. A number of witnesses testified that plaintiff stated to them that she entertained no affection for defendant, but married him for his supposed wealth, and that after about six months she was going to divorce him and obtain a considerable sum in alimony. They also testified to scurrilous language she used toward defendant. She denied that, but in number of witnesses, at least, her denial was overcome.

In view of all the circumstances of the case as developed by the record, all of which we have closely read, we are forced to the conclusion that plaintiff failed to prove her charge of cruel and inhuman treatment. Many circumstances fortifying that conclusion could be cited, but we deem it entirely unnecessary; and having arrived at that conclusion it is also unnecessary for us to determine whether defendant established his charge as contained in his amended answer, and for the purposes of the case we will dismiss it without expressing any opinion thereon.

If plaintiff were properly here by appeal or cross-appeal, then in view of what we have hereinbefore stated the only other question that would affect her would be the court's judgment sustaining the prayer of the intervening petition of the elder Mrs. Sallee, and upon that

question the proof was overwhelming that she was entitled to the amount given her by the judgment.

Another point argued by counsel for defendant is the excessiveness of the $500.00 allowance to plaintiff's attorney to be taxed as costs against him, but since the attorneys are not made parties to the appeal and the allowance was made direct to them *eo nomine,* we are prevented from considering it because they were not made parties to the appeal. Bartlett v. Louisville Trust Co., 212 Ky. 13, 277 S. W. 250.

Wherefore, the judgment allowing plaintiff $3,000.00 alimony is reversed, with directions to dismiss the claim.